## Quarture et ux., Appellants, *v.* Allegheny County et al.

Argued May 3, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

*John R. Bowman,* for appellants.

*John A. Metz, Jr.,* with him *John A. Metz,* for appellee.

OPINION BY STADTFELD, J., July 20, 1940:

The appellants, Peter Quarture and Pearena Quarture, his wife, in September, 1936, were the owners of real estate, by the entireties, located in South Fayette Township.

State Highway Route 545 had been widened and relocated on this property of the appellants, causing considerable damage.

Peter Quarture retained Mayer Sniderman, Esq., on September 24, 1936, to represent him and his wife, Pearena Quarture, in their claim against Allegheny County. On that day, Mayer Sniderman prepared a power of attorney naming himself as their lawful attorney to represent them in their cause of action against the county. The power of attorney contained provisions that Mayer Sniderman would prosecute to final determination, if necessary, any action or suit for the sum of ten per cent of all that might be recovered; expenses of $150 to be deducted from the gross award.

The claim was heard before the Board of Viewers and the sum of $1,650 was awarded. Thinking this was inadequate, Peter Quarture took an appeal through his attorney, Mayer Sniderman, to the court of common pleas. The case went to trial and the jury returned a verdict of $2,961 on December 8, 1938. There is conflicting testimony as to what fee Mayer Sniderman was to receive for the jury trial. Peter Quarture relied on the written agreement, while Mayer Sniderman set up an oral contract which gave him 33-1/3% of the verdict. In June of 1939, Mayer Sniderman presented a petition to the court praying that the verdict be paid into court and distribution made and that the fund of $2,961 be charged with a lien to the extent of $987 for the services of Mayer Sniderman. An answer was filed

by Peter Quarture to this petition and the case was heard before SMITH, J., on transcribed testimony taken on February 23, 1939. An order of distribution was made on July 12, 1939, as amended July 17, 1939, in which the prothonotary, in the name of the court, was ordered to distribute the fund, of which $987 was to be given to Mayer Sniderman. Peter Quarture filed exceptions to this order and before MARSHALL, SMITH, KENNEDY, JJ., the exceptions were severally dismissed, KENNEDY, J., dissenting. This appeal followed.

The power of attorney, copy of which appears in the record as Exhibit "A" attached to the answer, is apparently signed only by Mayer Sniderman. Appellee admits in his brief that the instrument was signed also by Quarture.

We cannot agree with the contention of appellee that the power of attorney is a purely unilateral legal instrument or that the client alone is obligated by its terms, or that it does not in fact bind or obligate the attorney to do anything. It is clearly a bilateral agreement under which the attorney agrees to perform certain services, and for these services he is to receive a certain percentage of the amount which may be recovered.

The function of the lower court, as well as of this court, is to ascertain the intention of the parties from the language of the contract which is unambiguous in character.

Under the terms of the power of attorney, Sniderman is constituted as attorney to "institute, conduct, superintend or prosecute to *final determination*, if necessary, a suit or suits, action or claim against the County of Allegheny on account of taking, injuring, and affecting (my, our) property in the relocation, widening, and opening of the State Highway, known as Route No. 545." (Italics supplied).

Pursuant to the power of attorney, the attorney prose-

cuted the claim of Quarture before the Board of Viewers of Allegheny County and received an award of $1,650. After the receiving of this award, the testimony shows that the attorney and client met and discussed the prosecution of an appeal and that the attorney viewed the successful prosecution of an appeal as uncertain and took the position that he would accept the award of the Board of Viewers and not take an appeal to the common pleas court unless the power of attorney aforesaid was cancelled and a new agreement was made between him and the client whereby he, as attorney, would receive, as his fee, a percentage of any recovery that might be made on the appeal, larger than the 10% provided for in the power of attorney.

The depositions taken on behalf of Mayer Sniderman, show that there was considerable discussion between the attorney and client with regard to this subject and that the final result thereof was that the power of attorney was cancelled or withdrawn by mutual agreement of the parties and that, before the taking of any appeal, a new agreement was made between the attorney and client whereby the attorney was to receive as his fees for the prosecution of the appeal, 33-1/3% of whatever recovery might be had.

After the making of this agreement, the attorney took and prosecuted an appeal to the court of common pleas and succeeded in securing a verdict of $2,961 in favor of the client.

When the question of the distribution of this verdict arose, the client insisted that the attorney was only entitled to 10% thereof, the percentage provided for in the original power of attorney. The attorney, on the other hand, claimed 33-1/3% of the verdict under the terms of the verbal agreement between him and the client made, as aforesaid, after the award of the Board of Viewers and before the taking of the appeal.

The court below held that the client was bound by the terms of the new verbal agreement which he made with

the attorney, as aforesaid, and awarded the attorney, out of the verdict, a fee computed on the 33-1/3% basis.

Appellee contends that the parol evidence rule is not involved in this case, and that as stated in *KoEune v. State Bank of Schuylkill Haven et al.*, 134 Pa. Superior Ct. 108, 4 A. 2d 234, at p. 111: "It is always competent for the parties to a written contract to show by parol evidence a subsequent modification, change, waiver of a condition, or the substitution of a new contract: (citing cases)."

While we agree with this statement, nevertheless where a subsequent oral contract is depended on, to change the terms of a prior written contract, it must be clearly and positively shown. We quote from the opinion of Judge PARKER of our court in *Goldman v. National Refrigerator Co., Inc.*, 120 Pa. Superior Ct. 458, 182 A. 730, quoting from the opinion of Mr. Justice BROWN in the case of *Phillips v. Amer. Cement Tile Mfg. Co.*, 220 Pa. 141, 69 A. 589, (pp. 145, 146): " 'If the question was simply one of the substitution of a new parol agreement for a per diem compensation for the work called for in the written contract, the contention of the appellant as to the insufficiency of the evidence to show that the clause as to compensation had been changed would have to be sustained. A presumption which is almost conclusive is, that when work is commenced under a written contract providing for its compensation, it is prosecuted to the end for such compensation, and this presumption is not to be overcome by less proof than is required to vary, modify or contradict a written agreement on the ground of the omission from it, by fraud, accident or mistake, of a contemporaneous parol agreement ...... When the compensation clause in a written contract is to be wiped out altogether and a new parol agreement substituted for it, the rule as to the measure of proof required to vary, modify or contradict a written agreement is to be applied with unabated rigor.' "

Appellee's contention is that the instant case was one of cancellation and rescission of the original power of attorney by mutual assent of both parties, and the substitution for that power of attorney of an entirely new and separate verbal agreement of the parties.

Our first duty is to construe the original power of attorney. What is meant by the terms "final determination?" Bouvier's Law Dictionary, 1934 Volume at p. 414 refers "final determination" to "final disposition", and under the latter, the following definition is given: "Final disposition.—Such a conclusive determination of the subject-matter embraced in a submission to arbitrators, that after the award is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon." In *Dean et al. v. Marshall et al.*, 35 N. Y. Supp. 724, the court held that the term "final judgment" is synonymous with the expression "final determination", and that the latter term's meaning is, "the final settling of the rights of the parties to the action beyond all appeal." Likewise in the case of *Ex parte Russell*, 13 Wallace (U. S.) 664, 669, in an opinion delivered by Mr. Justice BRADLEY, it was said: "The final determination of a suit is the end of litigation therein. This cannot be said to have arrived as long as an appeal is pending." See also, *Sinking Spring Water Co. v. Gring*, 257 Pa. 340, 101 A. 732.

The proceedings before the Board of Viewers cannot be considered as a "final determination" as their award is subject to appeal by either the owner of the property or by the municipality. If it were intended to provide for additional compensation in case of appeal from the award of viewers, it would have been a simple matter to have so provided in the power of attorney. We cannot rewrite the contract, we must construe it as the parties have written it.

In relation to the alleged change in the contractual relations between Mayer Sniderman and Peter Quarture,

the testimony of Mayer Sniderman was substantially that after the hearing before the Board of Viewers and before an appeal was taken, Peter Quarture came into his office and orally agreed to pay him 33-1/3% of the verdict on appeal and that Quarture again promised the same thing before witnesses outside of the assignment room of the common pleas court just before the trial of the case. The other persons testifying were real estate expert witnesses who claimed they were present and heard Quarture promise Sniderman he would pay him 33-1/3%, outside of the assignment room before the trial of the case.

The only difference between the power of attorney and the alleged oral contract is the amount of the compensation to be paid to Sniderman. The services to be rendered by the latter were the same in every respect.

Appellant denies having ever made the alleged oral agreement to pay additional compensation and contends that the alleged promise, if made, is void for lack of consideration.

The general principle is stated in 13 C. J. 351, as follows: "A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal." Likewise, at p. 353: "The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration." See also, Restatement of Law of Contracts, §76a.

There are many cases in which this rule of law is

laid down or adhered to but one that clearly sets out the reason for the rule is *Lingenfelder v. Wainwright Brewing Co.,* 103 Mo. 578. In that case, plaintiff, an architect engaged in erecting a brewery for defendant, refused to proceed with his contract upon discovering that a business rival had secured one of the sub-contracts. The company, being in great haste for the building, agreed to pay plaintiff additional compensation as an inducement to resume work. It was held that the new promise was void for want of consideration, the court (GANTT, P. J.) saying: "It is urged upon us by respondents that this was a new contract. New in what? Jungenfeld was bound by his contract to design and supervise this building. Under the new promise he was not to do anything more or anything different. What benefit was to accrue to Wainwright? He was to receive the same service from Jungenfeld under the new that Jungenfeld was bound to tender under the original contract. What loss, trouble or inconvenience could result to Jungenfeld that he had not already assumed? No amount of metaphysical reasoning can change the plain fact that Jungenfeld took advantage of Wainwright's necessities, and extorted the promise of five per cent on the refrigerator plant, as the condition of his complying with his contract already entered into. ...... What we hold is that, when a party merely does what he has already obligated himself to do, he cannot demand as additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as nudum pactum, and will not lend its process to aid in the wrong."

In *Erny v. Sauer,* 234 Pa. 330, 83 A. 205, it was held that a mortgagor's surrendering possession and removing from the premises after a default was no consideration for a promise by the mortgagee to release the mortgagor from liability on the mortgage, as he was merely

doing what "it was his duty to do or what he could have been compelled by legal process to do." Likewise, in *Cleaver v. Lenhart,* 182 Pa. 285, 37 A. 811, it was said: "Where a legal obligation exists a cumulative promise to perform it, unless upon a new consideration, is a nullity." See also, *Lewis, to use, v. Hamilton's Exrs. et al., Appellants,* 301 Pa. 173, 151 A. 812.

While we do not question the value of the services rendered by Mr. Sniderman, we are nevertheless constrained by reason of our interpretation of the written agreement, to limit the right of recovery to the amount stipulated therein. It is unfortunate that the written agreement did not stipulate additional compensation in case of an appeal.

The order and decree of the court below is reversed and the record is remitted for further proceedings, not inconsistent with this opinion. Costs to be paid by appellee.