## Lebovitz et al. v. Perfect B. & L. Assn.

*B. D. Oliensis* and *A. J. Goldin*, for plaintiffs.

*A. J. Goldin*, for administratrix of estate.

*H. A. Rutenberg*, for defendant.

WINNET, J., April 8, 1946.—

### *Findings of fact*

1. Plaintiff, Hyman Lebovitz, is a member of the Philadelphia bar.

2. Plaintiff, B. D. Oliensis, now deceased, was a member of the Philadelphia bar.

3. Defendant, Perfect Building and Loan Association, is a corporation organized under the laws of the State of Pennsylvania, and during the transactions

involved was acting through Arthur L. Berns, as sole liquidating trustee.

4. On August 17, 1939, defendant retained plaintiff, Hyman Lebovitz, to enter judgment on the bond and warrant of attorney against Louis Mandel and Jennie Mandel. Said judgment was entered in the Court of Common Pleas No. 1, as of June term, 1939, no. 4651.

5. On December 9, 1939, one, Abraham Kessler, filed a mechanics' lien against premises 3214 W. Clifford Street, Philadelphia, owned by the said Louis Mandel and Jennie Mandel, in the sum of $1,350, which mechanics' lien related back to August 11, 1939, and thus acquired priority over the lien on the judgment of defendant.

6. On December 26, 1939, a second mechanics' lien claim was filed against said premises in the sum of $1,074, which lien related back to August 14, 1939, and thus acquired priority to the judgment lien on the judgment of defendant.

7. On December 11, 1939, the said Louis Mandel and Jennie Mandel obtained a rule to show cause why the judgment of defendant association should not be stricken off.

8. In the course of his representation of defendant, plaintiff, Hyman Lebovitz, with the consent of defendant, engaged the late B. D. Oliensis as an associate.

9. The services rendered by plaintiffs for defendant association consisted of numerous consultations, conferences and the following legal proceedings, in addition to the entry of judgment:

(a) Preparation of a brief, appearance in Court of Common Pleas No. 1, and oral argument against defendants' rule to strike off the judgment. That rule was discharged on January 29, 1940.

(b) Drafting of a petition on behalf of said Perfect Building and Loan Association for a rule to amend

nunc pro tunc its affidavit in support of the judgment, and the preparation of a brief, appearance in Court of Common Pleas No. 1, and oral argument in support thereof. That rule was made absolute on January 29, 1940.

(c) Drafting of an answer to the petition of defendants in Common Pleas No. 1 for a rule to open the judgment, the conducting of the latter's cross-examination at their depositions in support of their said rule; the taking of counter-depositions and the preparation of a brief, appearance in Common Pleas No. 1, and oral argument against the said rule. That rule was discharged on June 29, 1942.

(d) Preparation and printing of appellee's brief, and attendance for argument in the Supreme Court, in defendants' appeal from the order of Common Pleas No. 1 discharging their said rule to open the judgment. That judgment was affirmed on January 4, 1943 (345 Pa. 616).

(e) Preparation of a brief, appearance in Common Pleas No. 1, and oral argument against the rule obtained by the said judgment defendants on February 4, 1943, to show cause why the said judgment should not be satisfied. That rule was discharged on March 5, 1943.

(f) Drafting of a petition on behalf of the Perfect Building and Loan Association in Common Pleas No. 7 for a rule upon Mike Omansky to strike off his mechanics' lien, and the preparation of a brief, appearance in the said court, and oral argument in support thereof. The rule was made absolute on June 28, 1943.

(g) Drafting of a petition on behalf of the Perfect Building and Loan Association, in Common Pleas No. 2, for a rule to strike off the mechanics' lien of Abraham Kessler or to postpone it to the lien of the said Perfect Building and Loan Association, and to vacate the appointment of the sequestrator thereunder; and

the preparation of a brief, appearance in the said court, and oral argument in support thereof. The rule to postpone the said mechanics' lien was made absolute on March 9, 1944, and the appointment of the sequestrator was vacated, thus enabling plaintiffs to proceed with execution against the said liened premises.

10. On November 14, 1942, during the pendency of the proceedings, defendant association agreed to pay to plaintiffs in addition to $100 previously paid, a sum equal to one fourth of the amount of ultimate recovery under the judgment.

11. After the mechanics' liens had been discharged in the lower court, plaintiffs exposed premises 3214 W. Clifford Street to sale on the judgment of defendant, which sale took place on the first Monday of May 1944, and was purchased by plaintiffs for and on behalf of defendant for the sum of $4,150, who then and there paid to the sheriff a deposit of $340; the said deposit was made by plaintiff, Hyman Lebovitz, under the promise made by defendant through the sole liquidating trustee to repay it immediately thereafter.

12. Before final settlement with the sheriff, the Superior Court reversed the decision of the lower court in postponing the mechanics' lien of Abraham Kessler (Kessler v. Mandel, 156 Pa. Superior Ct. 505) ; the effect of said decision being that defendant could only take the property it purchased at the sheriff's sale subject not only to the lien of a mortgage but also to the mechanics' lien in favor of Abraham Kessler.

13. Defendant association made no settlement with the sheriff for the property purchased on the first Monday of May 1944, and never repaid to plaintiff, Hyman Lebovitz, the $340 which he had deposited at the request of defendant.

14. The fair and reasonable compensation to plaintiffs for the services rendered is the sum of $750.

*Discussion*

Plaintiffs, members of the Philadelphia bar, are seeking to recover the sum of $1,045.15 for services rendered pursuant to a contingent fee agreement. The services originated in August 1939 in the employment of one of the plaintiffs, Hyman Lebovitz, by Arthur L. Berns, liquidating trustee of defendant association, to enter judgment in its favor against the obligors named in a bond. The entry of judgment was but the beginning of long and drawn out litigation to sustain it both as to its validity and priority as a lien against property of the judgment debtors situated at 3214 W. Clifford Street, Philadelphia. The priority of the lien of the judgment was threatened by two mechanics' lien claims which were filed subsequent to the judgment, but if sustained would have antedated the lien of the judgment. The very judgment of defendant was attacked by proceedings to open. In this litigation plaintiff, Hyman Lebovitz, associated with the late B. D. Oliensis, the other plaintiff.

The judgment of defendant was sustained in the lower court and also in the Supreme Court (Perfect Building and Loan Association v. Mandel, 345 Pa. 616). Plaintiffs were successful in postponing the mechanics' lien claims in the lower court, but one of the lienors filed an appeal to the Superior Court which reversed the lower court and thus had the effect of deferring defendant association's judgment to that mechanics' lien (Kessler v. Mandel, 156 Pa. Superior Ct. 505).

During the progress of this litigation there was no concrete agreement as to fees. Plaintiff, Lebovitz, had received $100 as a retaining fee. On November 17, 1942, a letter was forwarded to Berns, the liquidating trustee of defendant association suggesting as a basis for determining the fee, 25 percent of the amount recovered in the pending proceedings. According to plain-

tiffs, Berns acknowledged the receipt of the letter and confirmed its contents as satisfactory.

During the pendency of the appeal on the mechanics' lien case in the Superior Court, plaintiffs exposed premises 3214 W. Clifford Street to sheriff sale on the judgment in favor of defendant. Plaintiff, Lebovitz, appeared at the sale in accordance with instructions of the liquidating trustee and purchased the property for defendant for the sum of $4,150, and paid to the sheriff the sum of $340 as a deposit. Defendant refused to put up the balance of the purchase price and never took title to the property.

Plaintiffs now claim the sum of $1,045.15 for services rendered under the contingent agreement, basing it on 25 percent of the purchase price of the property at the sheriff's sale. Plaintiff, Hyman Lebovitz, claims the further sum of $340, which he deposited at the sale.

Defendant association does not dispute the extent of the services rendered. It denied the existence of any contingent fee agreement and admits only an obligation to pay plaintiffs a fair and reasonable fee, which it alleges to be the sum of $500, $100 of which has been paid. Plaintiffs took judgment for the sum of $400 admittedly due and proceeded to trial for the balance.

During the course of the trial a written stipulation was entered into by the parties agreeing that the case might be disposed of by the trial judge without a jury.

We found as a fact that the contingent fee agreement was made. If it is to be given effect it must be as a percentage of the recovery made for defendant. Was there a recovery made by plaintiffs on which to measure the contingency? Certainly defendant has acquired no cash. It could have taken title to premises 3214 W. Clifford Street sold at the sheriff's sale. For reasons sufficient to it, it has declined to take title. Shall we value the property at the amount it brought

at the sheriff's sale and base plaintiffs' recovery on 25 percent of this value? The record has no competent evidence of any other value.

From the view we take of the dealings between the parties, we do not have to decide whether there has been a recovery. Defendant, since it challenges the contingent agreement, is not bound thereby. The relationship of attorney and client had existed between the parties for three years prior to its making.

The law will not recognize a contingent agreement made with attorneys during the pendency of litigation. A confidential relationship existed between the parties and as long as an agreement is either denied or challenged by one of the parties, equity would compel a court to disregard it and to determine the matter irrespective of the agreement. Plaintiffs, as attorneys, are to be paid reasonable compensation in accordance with the understanding at the initiation of the relationship between the parties.

The principle is stated in Story's Equity Jurisprudence 14th Ed.), vol. I, sec. 433, as follows:

"The situation of an attorney . . . puts it in his power to avail himself not only of the necessities of his client, but of his good nature, liberality, and credulity to obtain undue advantages, bargains, and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable . . . the principle . . . supersedes the necessity of any inquiry into the particular means, extent, and exertion of influence in a given case; a task often difficult, and ill-supported by evidence which can be drawn from any satisfactory sources."

In Filon's Estate, 7 Dist. R. 316, in an opinion by Judge Penrose, it was held that while an agreement between an attorney and client for a contingent fee is

not per se illegal, nevertheless, if such agreement is entered into after the relationship of attorney and client has been established, it may be voided by the latter irrespective of any actual fraud. The same ruling was held in Maires' Case, 7 Dist. R. 297 (affirmed 189 Pa. 99), in which the supplemental agreement had the effect of increasing the compensation originally contemplated.

In Stern & Swift v. Hyman Bros., 182 N. C. 422, 423, 109 S. E. 79, the court held:

'It is, and should be, well settled that where the relation of attorney and client exists and the contract sued upon by the attorney is made during the existence of the relationship, and more especially when the contract is for a portion of the subject-matter contended for, as here, the attorney can recover no more than a reasonable compensation for his services, no matter what kind of a contract he made with his client or induced him to enter into. This rule is based upon the confidential relations existing between attorney and client, and is enforced, not upon the ground that there was fraud, but in order to prevent fraud and as a matter of sound public policy." See also: Boston Bar Association v. Hale, 197 Mass. 423, 437; Matter of Howell, 215 N. Y. 466.

Two recent cases, Quarture v. Allegheny County, 141 Pa. Superior Ct. 356, and Esakovich et al. v. Groudine, 141 Pa. Superior Ct. 365, illustrate the principle further. In both these cases the court held supplemental agreements between attorney and client invalid, being without consideration since the promisees, the attorneys, were already under obligation to perform the services rendered. Plaintiffs in the present case were under obligation to defendant to do all that was possible to recover on the judgment. With nothing in the record to indicate that plaintiffs desired to terminate the relationship, and were induced to continue by reason of

the contingent agreement, we might well say there was no consideration for the supplemental agreement.

The only question that remains is: What is the fair value of the legal services which were rendered?

I have taken into consideration the quantum of the services. I have taken into consideration the high professional standing of the late B. D. Oliensis. I have also considered the results obtained for defendant in the litigation. I cannot accept the contention of plaintiffs that by failing to settle for the property purchased at the sheriff's sale, defendant has defeated a valuable recovery or a successful ending of the litigation in which plaintiffs might have shared. To take or not to take title was a question which defendant itself had to answer. I find nothing unreasonable or malicious in the decision it made.

I have, therefore, concluded that under all the circumstances the fair and reasonable value of the services rendered by the plaintiffs was $750. As plaintiffs have already received the sum of $100, and have taken judgment for $400, admittedly due under the affidavit of defense, this entitles the plaintiffs to a finding in the sum of $250. In addition thereto plaintiff, Hyman Lebovitz, is entitled to be reimbursed in the sum of $340, the deposit which he made at the sheriff's sale. I find for plaintiff, Hyman Lebovitz, and the Estate of B. D. Oliensis, deceased, in the sum of $250; and for plaintiff, Hyman Lebovitz, an additional sum of $340, with interest from May 1, 1944, amounting to $39.55, or a total sum of $379.55.

### Conclusions of law

1. Plaintiffs are not entitled to compensation under the contingent agreement sued upon.

2. Plaintiffs are entitled to fair and reasonable compensation for the service rendered at the request of defendant.

3. The fair and reasonable compensation for the services rendered is the sum of $750.

4. Plaintiffs having a judgment of $400, and having been paid the sum of $100 on account of said services rendered, are entitled to a finding of $250.

5. Plaintiff, Hyman Lebovitz, is entitled to be paid an additional sum of $379.55, in reimbursement of the sum of $340 deposited for defendant at the sheriff's sale, and interest thereon.

6. The court finds for plaintiffs, Hyman Lebovitz, and the Estate of B. D. Oliensis, deceased, in the sum of $250, and finds an additional sum in favor of Hyman Lebovitz in the sum of $379.55.