## Hutchinson v. Penn State Investors Life Insurance Company

302

*Richard B. Wickersham,* for plaintiff.

*Nathan B. Feinstein,* for defendant Penn State Investors.

*Lewis F. Adler,* for defendant William Brody.

BOWMAN, J., July 3, 1967.—In this motion for judgment n.o.v., defendant, Penn State Investors Life Insurance Company (Penn State) raises one contention which, if sound, would require entry of judgment in its favor notwithstanding a contrary jury verdict.[1] The issue raised goes to the fundamental question of whether legal consideration was present to support a promise of Penn State to pay a certain sum of money to plaintiff, James H. Hutchinson.

Considering all of the evidence and reasonable inferences to be taken therefrom in a light most favorable to the verdict winner (Schreckengost v. Kraft, 415 Pa. 567 (1964)), the record discloses that

---

[1] Penn State also filed a motion for a new trial assigning the standard reasons in support thereof and also raising an issue pertaining to the statute of frauds. At argument, however, it raised no trial rulings or errors which would support such a motion and did not argue the issue of the statute of frauds.

plaintiff property owner entered into a written lease agreement with Penn State for the latter's use of office space in a commercial building for a term of five years beginning June 14, 1963, at a total rental of $17,475, to be paid in monthly installments of $290. In the latter part of 1963 and early 1964, informal discussions and an exchange of correspondence took place between the parties concerning additional space requirements of Penn State in said building or in an addition to be erected thereto. The lease agreement between the parties contained a number of provisions on this subject. They need not be considered, however, as they are not directly involved in this dispute.

On or about March 28, 1964, Penn State inquired of Hutchinson as to the possibilities of negotiating a cancellation of the lease for the balance of its term. Three days later, William Brody, a stranger to Hutchinson,[2] approached Hutchinson and, as a result of a discussion between them, made a written offer to Hutchinson which he accepted. The offer stated:

"I would be willing to pay you the sum of thirty-four hundred eighty dollars ($3,480.00), as a consideration for the release of the Penn State Investors from their lease on the offices they occupy in the Park Plaza Building.

"This offer is contingent on the successful negotiations between me and the Penn State Investors for new offices".

On April 2, 1964, Hutchinson made a written offer to Penn State to release it from its lease with him as follows:

---

[2] Brody is a second defendant in this case under a separate count of plaintiff's complaint and against whom the jury rendered a separate verdict in favor of plaintiff for $3,480, which has been satisfied.

"I would be willing to release you from your lease under the following conditions;

"1 Vacate premises by May 15, 1964

"2 That you will lease space from William Brody at 1005 Market Street, Lemoyne, Pa.

"3 That you will pay me one years rent in advance $3,480.00

"4 That this agreement has no bearing on any side agreement I have with Mr. William Brody".

While there is conflicting testimony concerning Penn State's acceptance of this offer, the jury verdict resolved this conflict in favor of plaintiff. Thereafter, Penn State leased office space from defendant Brody under the terms of which Penn State was given a reduction of rent for the first year of the term in the amount of $3,480, and Penn State vacated the premises leased to it by Hutchinson prior to May 15, 1964. After these events, neither Penn State nor Brody paid Hutchinson any sum of money. Hutchinson then brought this action claiming damages of $3,480 from each of defendants, Penn State and Brody, by separate counts in his complaint.[3]

It is Penn State's contention that its agreement with Hutchinson is unenforceable for want of consideration inasmuch as he was already under legal obligation to Brody to release Penn State from its lease agreement with Hutchinson. This contention is found in a precept of contract law that a promise to do an act one is already bound to perform is not valid consideration.

Consideration has been defined as a benefit to the party promising or a loss or detriment to the party to whom the promise is made, and the consideration nec-

---

[3] Which resulted in separate verdicts against each defendant in the amount of $3,480.

essary to establish a valid contract must be an act, a forbearance or a return promise bargained for and given in exchange for the promise: Thomas v. R. J. Reynolds Tobacco Company, 350 Pa. 262 (1944).

As otherwise stated in Mikos v. Kida, 314 Pa. 561 (1934), at page 563:

"One of the tests of consideration is whether the promisee, at the instance of the promisor, has suffered any detriment, or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something: Presbyterian Board of Foreign Missions v. Smith, 209 Pa. 361. There may even be a consideration without the accrual of any benefit at all to the promisor. If the promisee has suffered any detriment, however slight, or, though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given a consideration and the court will not ask whether the promisor was benefited".

Applying these tests of legal consideration which are sufficient to support a contract, an analysis of the sundry promises made by and between Hutchinson and Penn State, and Hutchinson and Brody, discloses valid consideration to support Penn State's promise to pay Hutchinson the stated sum of money.

Hutchinson first contracted with Brody by promising to release Penn State from its lease with him in return for Brody's promise to pay him $3,480. When entered into, this contract was both executory and conditional with both promises subject to Brody's successfully negotiating a lease agreement with Penn State. At this juncture, therefore, the possibility existed that neither party would be required to perform their respective promises as they were wholly conditioned upon the action of a third party, Penn State,

on entering into a lease agreement with Brody. It must also be noted that no time limitation is contained in this Brody-Hutchinson contract and, therefore, it would be subject only to a test of reasonableness of time. However, at the moment Penn State entered into a lease agrement with Brody, the condition of the Brody-Hutchinson contract was met, Brody became obligated to pay Hutchinson $3,480 and Hutchinson was obligated to release Penn State from its lease agreement with him.

It is at this moment, Penn State contends, that its promise to pay Hutchinson $3,480 is not supported by valid consideration, as Hutchinson's only promise to it under its ostensible agreement with Hutchinson is to release it from its lease, an obligation already required to be performed by Hutchinson under his contract with Brody. In support of its position, Penn State relies on the principle restated in Commonwealth Trust Company General Mortgage Investment Fund Case, 357 Pa. 349 (1947), at page 354:

" 'Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. Such promise adds nothing to and takes nothing from the original obligation. . . . A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound. . . .': Wimer v. Overseers of the Poor of Worth Township, 104 Pa. 317, 320. Erny v. Sauer, 234 Pa. 330, 334, 83 A. 205. 'A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal': Quarture v. Allegheny County, 141 Pa. Superior Ct. 356, 363, 14 A. 2d 575. 'Doing what one is already legally obliged to do is not good and sufficient consideration': Murray v. Pruden-

tial Insurance Co., 144 Pa. Superior Ct. 178, 187, 18 A. 2d 820; Tradesmen's National Bank v. Cummings Bros. Co., 306 Pa. 280, 282, 159 A. 452".

Had Hutchinson conditioned his promise to Penn State simply upon Penn State's promise to pay him $3,480 for doing so, we would be inclined to agree that the principle enunciated in the Commonwealth decision would control. In such a case, Penn State, as the third-party beneficiary of the Brody-Hutchinson agreement, as to its being released from its lease commitment with Hutchinson, would have received no benefit in return for its promise to pay Hutchinson a like amount of money. But such is not the present case. In accepting Hutchinson's promise to directly release it from its lease agreement with him, Penn State promised considerably more than the payment of the stipulated sum for such a release. First, it promised Hutchinson to vacate the leased premises by a specified date, a very real and material promise to a landlord faced with finding a new tenant for one who otherwise was bound by a lease with several years to run. Such a time limitation is notably absent in the Brody-Hutchinson agreement. Secondly, it promised to pay Hutchinson $3,480 as *one year's rent in advance,* which promise we conceive to be a different monetary consideration than that made by Brody to Hutchinson for Penn State's release. We believe this to be particularly so under the unique circumstances of these two related agreements where Hutchinson clearly stated in his offer to Penn State that it had "no bearing on any side agreement I have with Mr. William Brody". In accepting Hutchinson's offer, Penn State was put on notice of an agreement between Brody and Hutchinson and acknowledged that the former agreement had no interrelationship with the agreement it entered into with Hutchinson. Yet Penn

State would now repudiate this very covenant, which was bargained for by Hutchinson and agreed to by Penn State in accepting Hutchinson's offer. In our opinion, any one or more of these promises by Penn State constitute new and different considerations to support the validity of the Hutchinson-Penn State contract and to make inapplicable the rule stated in the *Commonwealth* decision.

One additional matter merits further comment. Threaded throughout Penn State's argument is the suggestion that Hutchinson should receive but one $3,480 payment for releasing Penn State from its lease agreement with him and that it is somehow unfair or unjust for him to receive two such payments, one from Brody and one from Penn State. Under the pleadings and the theory upon which the case was tried, whether the various parties made a good or bad bargain is not before us. Suffice it to say that when negotiations were initiated, Penn State was Hutchinson's tenant under a lease agreement with approximately four years remaining of its original term. This would have yielded Hutchinson about $16,000 gross rental for the remainder of the term. In releasing Penn State from this commitment, he did so for a total monetary consideration of $6,960, half of which Penn State agreed to pay and half of which Brody agreed to pay, each by separate contract.

It is also noteworthy that Penn State, in effect, recouped the amount of money it contracted to pay Hutchinson under the terms of the lease it negotiated with Brody wherein its first year rental was reduced by an identical amount of $3,480. It is not for us to say whether the transactions were beneficial to all concerned or to only some. There being valid consideration to support the mutual promises made by Hutchin-

son and Penn State, one to the other, the contract is enforceable.

For the foregoing reasons, Penn State's motion for judgment n.o.v. must be dismissed. Accordingly, we enter the following:

ORDER

And now, July 3, 1967, the motion of Penn State Investors Life Insurance Company for judgment n.o.v. is dismissed, and it is hereby directed that judgment on the verdict in favor of plaintiff be entered upon payment of costs.