**Current Coal Contracts**

PACKEL, Attorney General, January 14, 1974.—We have received a request for an opinion from your department asking whether the Department of Property and Supplies can negotiate a price increase for vendors

of coal who have contracted to supply coal for the Commonwealth. Since the price of coal has increased substantially in recent months, the vendors will sustain losses on their contracts unless the contract prices are renegotiated. It is our opinion, and you are so advised, that a renegotiation of the contract so as to increase the vendor's compensation is not legal.

A renegotiation of a contract implies the creation of a new contractual relationship which changes the rights and responsibilities of all parties involved. In this case, the only changed rights in the contract would involve an increase in compensation to the coal vendors. The vendor would get an increase in his price, while the Department of Property and Supplies would receive nothing in return, other than continued delivery of coal, which the vendors are legally bound to deliver regardless. It is a general principle of contract law that the performance of an act which one party is legally bound to render to another is not legal consideration: Sum. Pa. Jur. Contracts §118. An increase in compensation to the coal vendors would result in an expenditure of public funds by the Department of Property and Supplies, without the department or the Commonwealth receiving any consideration in exchange.

The only circumstances where a renegotiation of a contract could be considered is where unforeseen circumstances make performance impossible or impractical. In a case such as that, however, a renegotiation of the contract could not result in an increase in compensation, but could only involve a mutual agreement to terminate the contractual relationship.

An increase in expense, such as evidenced by the circumstances facing coal vendors today, is not such a change in circumstances sufficient to warrant a termination of the contractual relationship. In Com-

monwealth v. Bader, 271 Pa. 308 (1921), a vendor sought to be released from his contract because of increased costs due to the outbreak of World War I. The vendor contended that resultant shortages made his performance impractical, if not impossible. The court ruled that the vendor must supply the goods at the agreed upon price, and that an increase in costs was not a valid reason for termination of the contractual relationship.

A case somewhat in point is Dockett v. Old Forge Borough, 240 Pa. 98 (1913). In that case, a borough entered into a contract with a contractor for construction of a sewer. Shortly after work began, the contractor's employes struck, and eventually obtained an increase in salary. Because of the resultant salary increase, the contractor notified the borough that he could not complete the work. The borough agreed to pay the contractor additional compensation because of these "unforeseen expenses." Suit was brought by a taxpayer to enjoin such payments. The court ruled that the borough had no right to pay additional compensation, even under the threat of nonperformance. The court went on to say that the contractor had a previously existing legal right which the borough could enforce at law, and to expend public funds to insure performance of this previously existing legal obligation was illegal. See also Quarture v. Allegheny County, 141 Pa. Superior Ct. 356, 364 (1940), where the court stated: "[W]hen a party merely does what he has already obligated himself to do, he cannot demand additional compensation therefor."

The question of what constitutes changed conditions that are sufficient to render a contract impossible or impracticable is dealt with in section 2-615 of the Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, 12A PS §2-615. That section, however,

does not sanction additional compensation when difficult or changed circumstances arise, but, rather, notes that such changed circumstances can be the basis for delay or nonperformance on the part of a vendor. In addition, comment 4 to section 2-615 provides:

"Increased cost alone does not excuse performance unless the rise in cost is due to some unforeseen contingency which alters the essential nature of the performance. Neither is a rise or a collapse in the market in itself a justification, for that is exactly the type of business risk which business contracts made at fixed prices are intended to cover. But a severe shortage of raw materials or of supplies due to a contingency such as war, embargo, local crop failure, unforeseen shutdown of major sources of supply or the like, which either causes a marked increase in cost or altogether prevents the seller from securing supplies necessary to his performance, is within the contemplation of this section."

Such is not the case here. Additionally, Article III, §26 of the Pennsylvania Constitution provides, in part:

"No bill shall be passed giving any extra compensation to any . . . contractor, after services shall have been rendered or contract made."

Any increase in compensation granted to the vendor would involve additional expenditures by the Department of Property and Supplies. Although Article III, §26 of the Constitution does not expressly bar the executive from increasing compensation to a contractor after a contract has been made, the policy expressed therein is sound and, in view of the case law cited above, should be adhered to by the executive branch of government.

Finally, there are, of course, the constitutional and statutory requirements of competitive bidding. See Article III, §22, of the Pennsylvania Constitution and the Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §633. The clear intention of these provisions would be frustrated if vendors would be allowed to renegotiàte contract prices in contracts awarded as a result of competitive bids.

In conclusion, therefore, it is our opinion, and you are so advised, that the Department of Property and Supplies may not negotiate an increase in the price of coal to be supplied to the Commonwealth by vendors who have contracts with the State.