STATE of Minnesota, by Linda C. JOHNSON, Commissioner, Department of Human Rights, petitioner, Appellant,

v.

John COLONNA, Acting Director of Personnel, City of St. Paul, Minnesota, Respondent.

No. C2-85-407.

Court of Appeals of Minnesota.

July 30, 1985.

. Hubert H. Humphrey, III, State Atty. Gen., Helen ·G. Rubenstein, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Edward P. Starr, St. Paul City Atty., Terry Sullivan, Asst. City Atty., St. Paul, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

The Commissioner of the Minnesota Department of Human Rights issued an investigatory subpoena to the City of St. Paul requesting information concerning an alleged claim of discriminatory hiring by the City. The City disclosed some of the requested information, but refused to disclose other information, alleging that the Government Data Practices Act (GDPA) precluded its release except pursuant to a valid court order. The Commissioner issued a second subpoena requesting the information which the City refused to disclose pursuant to the first subpoena. The City again refused to disclose the requested information. The Commissioner commenced an action in Ramsey County District Court, seeking an order directing the City to disclose the information requested in the subpoena or to show cause why it should not be held in contempt. The trial court determined it had no authority to compel disclosure of the information requested in the Commissioner's subpoena. We reverse.

## FACTS

In October 1984 LeRoy G. Ramos filed a charge with the Department of Human Rights alleging discriminatory reprisal by the City of St. Paul. Ramos alleges the City refused to hire him for a firefighter position even though he was at least as qualified as persons who were hired. He claims the discrimination resulted because he was a named plaintiff in a class-action suit against the City charging racial discrimination in hiring. The City interposed the defense that Ramos was not offered employment because of unsatisfactory results in a background investigation.

During the investigation of the discrimination charge the Commissioner determined it was necessary to review documents regarding the City's hiring process for the firefighter position, including information regarding all candidates for the position. The Commissioner contacted the City about obtaining the necessary information. The City indicated it had no objection to turning over the information, but claimed the information was private data which could only be released pursuant to a valid court order as required by Minn.Stat. § 13.43, subd. 4 (1984). The Commissioner took the position that a subpoena issued by the Department was, in effect, "a valid court order" as required by section 13.43, subd. 4. The City rejected this position and refused to release the information.

The Commissioner then issued an investigatory subpoena pursuant to Minn.Stat. § 363.05, subd. 1(10) (1984), seeking information and documents concerning the City's hiring process for the firefighter position. In response the City provided some but not all of the requested information. The City refused to disclose all documents it used or relied upon in its decision to hire or reject each candidate for the firefighter position. The Commissioner then issued a second subpoena, again requesting the omitted information. The City again refused to disclose the information requested in the subpoena. The Commissioner then commenced an action in Ramsey County District Court, seeking an order directing the City to comply with the subpoena or to show cause why it should not be held in contempt of court.

By order dated January 23, 1985, the trial court held (1) the requested documents in the subpoena contained personnel private data under the GDPA and could only be released to the Commissioner pursuant to a valid court order under Minn.Stat. § 13.43, subd. 4; and (2) the trial court had no statutory authority to issue such an order. The Commissioner's motion for enforcement of the subpoena was denied. Judgment was entered January 31, 1985.

## ISSUES

1. Did the trial court err in denying enforcement of the Commissioner's subpoena on the basis that it did not have authori-

ty to order disclosure of the personnel private data?

2. Does a subpoena issued by Commissioner of the Department of Human Rights constitute a "valid court order" under Minn.Stat. § 13.43, subd. 4?

## ANALYSIS

### I.

Individuals who believe they have been aggrieved by an unfair discriminatory practice may file a discrimination charge with the Department of Human Rights. *See* Minn.Stat. § 363.06, subd. 1 (1984). The Commissioner of the Department of Human Rights is required to investigate the charge to determine whether there is probable cause to believe the allegations. *See* Minn.Stat. § 363.06, subd. 4 (1984). Minn. Stat. § 363.05, subd. 1(9) and (10) (1984), provides:

> The commissioner shall formulate policies to effectuate the purposes of this chapter and shall:
>
> \*    \*    \*    \*    \*    \*
>
> (9) issue complaints, receive and investigate charges alleging unfair discriminatory practices, and determine whether or not probable cause exists for hearing;
>
> (10) subpoena witnesses, administer oaths, take testimony, and require the production for examination of any books or papers relative to any matter under investigation or in question; authorize hearing examiners to exercise the authority conferred by this clause;
>
> \*    \*    \*    \*    \*    \*

The Commissioner may also seek enforcement of a subpoena with contempt proceedings in district court. *See* Minn.Stat. § 363.05, subd. 2 (1984).

In this case the Commissioner alleges (1) she had a compelling need to conduct pre-complaint discovery because of her statutory responsibility to investigate the discrimination charge under Minn.Stat. § 363.06, subd. 4; and (2) the requested documents in the subpoena are necessary for a thorough investigation of the charge of discrimination.

It is undisputed that the documents and information sought by the Commissioner contain information classified as personnel data under Minn.Stat. § 13.43, subd. 1 (1984). Personnel data may be in part public data. *See* Minn.Stat. § 13.43, subds. 2 and 3 (1984). However, in this case it is undisputed that the information which the City failed to disclose was private data. Minn.Stat. § 13.43, subd. 4 (1984), provides:

> Subd. 4. All other personnel data is private data on individuals, except pursuant to a valid court order.

*Id.* Neither the legislature, nor the Minnesota appellate courts have interpreted when personnel private data may be disclosed, or the meaning of "except pursuant to a valid court order." This court must determine what the legislature intended by the language in Minn.Stat. § 13.43, subd. 4. The trial court interpreted "valid court order" to mean specific authorization of disclosure of the personnel private data and ruled it did not have the necessary authorization to order disclosure—that it would not be "valid" to issue such an order.

In this case we have strong public policy supporting both the limited and protected disclosure of private data under the GDPA and the broad investigatory responsibilities and powers of the Commissioner of the Department of Human Rights. The general purpose of the GDPA is to:

> [C]ontrol the state's collection, security, and dissemination of information in order "to protect the privacy of individuals while meeting the legitimate needs of government and society for information."

*Minnesota Medical Association v. State*, 274 N.W.2d 84, 87 (Minn.1978) (citations omitted). However, the responsibilities of the Commissioner are supported by equally strong public policy which seeks to eliminate unfair discriminatory practices throughout the state.

This court holds that the statutory powers of the Commissioner can be reconciled

with the provisions in the GDPA. Minn. Stat. § 13.43, subd. 4, recognizes that personnel private data may not be disclosed except pursuant to a court order. However, the legislature also requires that the Commissioner promptly investigate claims of discriminatory practices and vests her with broad investigative powers. The Commissioner can subpoena witnesses and require the production of any papers or documents relative to any matter under investigation or in question. Minn.Stat. § 363.05, subd. 1(10). The rules of statutory construction recognize that Minn.Stat. § 13.43, subd. 4, and Minn.Stat. § 363.05, subd. 1(10), should be read together and, if possible, construed "so that effect may be given to both." Minn.Stat. § 645.26, subd. 1 (1984).

■ Minn.Stat. § 363.05, subd. 1(10), and the Commissioner's broad investigative responsibilities and powers provide sufficient authorization for the trial court to issue an order pursuant to Minn.Stat. § 13.43, subd. 4. To find otherwise would unnecessarily curtail the Commissioner's statutorily imposed investigative responsibilities and powers and would frustrate the strong state public policy which seeks to eradicate discrimination. It would be the equivalent of placing the Commissioner in a rowboat without oars or motor and directing her to cross the lake as best she can.

Further authorization for the release of the information requested in the Commissioner's subpoena can be found in Minn. Stat. § 13.05, subd. 4(b) and subd. 9 (1984), which provide:

Subd. 4. **Limitations on collection and use of data.** Private or confidential data on an individual shall not be collected, stored, used or disseminated by political subdivision, statewide systems or state agencies for any purposes other than those stated to the individual at the time of collection in accordance with section 13.04, except as provided in this subdivision.

\*　\*　\*　\*　\*　\*

(b) Private or confidential data may be used and disseminated to individuals or agencies specifically authorized access to that data by state, local, or federal law subsequent to the collection of the data.

\*　\*　\*　\*　\*　\*

Subd. 9. **Intergovernmental access of data.** A responsible authority shall allow another responsible authority access to data classified as not public only when the access is authorized or required by statute or federal law. An agency that supplies government data under this subdivision may require the requesting agency to pay the actual cost of supplying the data.

Minn.Stat. § 363.05, subd. 1(10), is statutory authorization providing the Commissioner of the Department of Human Rights access to the requested information under Minn.Stat. § 13.05, subd. 4(b) and subd. 9. However, personnel private data should not be disclosed except pursuant to a court order under Minn.Stat. § 13.43, subd. 4.

In *Montana Human Rights Division v. City of Billings,* 649 P.2d 1283 (1982), the Montana Supreme Court was faced with a similar fact situation concerning an investigation by the Montana Human Rights Commission of allegations of discriminatory hiring by Billings. The Commission issued a subpoena to Billings for personnel files, employee evaluations, disciplinary records, test scores, and other application materials. The subpoena was issued pursuant to a Montana statute which vested the Commission with nearly identical investigative powers granted under Minn.Stat. § 363.05, subd. 1(10). Billings refused to disclose the information requested in the subpoena. The district court also denied the Commission's petition for enforcement of the subpoena. On appeal, the Montana Supreme Court found a compelling state interest in enforcement of the Human Rights Act and in the Human Rights Commission's ability to carry out its investigative function.

The investigative powers of the HRC [Human Rights Commission] must be broad enough to allow a thorough scrutiny of the circumstances surrounding complaints of discrimination. The scruti-

ny in the present case must involve comparison of employee records, applications, evaluations, tests, etc. There is simply no other way for the HRC to determine whether the City and County discriminated in the ways alleged by complainants. A consideration of the complainants' files alone would not yield the comparative data which is essential here. To deny the HRC access to the material it seeks renders ineffectual a substantial portion of its statutory investigative powers, and is a large step toward drawing the teeth of the HRC. That we are unwilling to do.

*Id.* at 1289. The Montana Supreme Court ordered Billings to disclose the information requested in the subpoena subject to the restrictions of a protective order.

■ The principles announced in *Montana Human Rights Division* are equally applicable to this case. Although we hold the trial court has the authority to issue an order for disclosure of the private personnel data sought by the Commissioner, we are also mindful of the broad protection contemplated by the GPDA and the strong public interest furthered by this protection. However, these concerns can be met by a carefully worded protective order, which limits the disclosure to the Commissioner and the Department of Human Rights and prevents the information from becoming the subject of public revelation or discussion. It is common practice for trial courts to impose protective conditions on discovery matters when justice requires a party or person be protected from annoyance, embarrassment, oppression, undue burden, or other types of concerns. *See* Minn.R. Civ.P. 26.03. Such a protective order should be utilized in this case.

■ The protective order in *Montana Human Rights Division* is a helpful starting point for the fashioning of a protective order. In *Montana Human Rights Division* the court directed Billings to turn over the information to the Commission, but precluded the Commission from disclosing any of the information to any individual, agen-

cy, or party except under the following conditions:

(1) If a public hearing is held on the alleged discriminatory claim, or the Commission is required to disclose the information to anyone outside the Department, the information shall be altered to provide anonymity for the involved persons. This would include the elimination of names and other classifications, such as ethnic designations which may lead to the identification of an individual.

(2) If the Commission is required to release the information which may disclose the identity of the involved person, she must obtain a further order of authorization and protection before the release of the information.

(3) Failure of the Commission to comply with the protective order shall make the offending person subject to contempt proceedings. *See generally Id.* at 1291.

These types of safeguards protect the privacy interests of affected individuals and fulfill the policy objectives of the GDPA. The trial court might adopt other safeguards to guarantee the privacy interests contemplated by the GDPA.

## II.

■ The parties requested the court resolve whether a subpoena issued by the Commissioner of the Department of Human Rights is the equivalent of a valid court order under Minn.Stat. § 13.43, subd. 4. Initially, the Commissioner alleged that the issuance of a subpoena automatically entitled her to the information identified in the subpoena, even if it is classified as personnel private data under the GDPA. The Commissioner's subpoena is not the equivalent of a court order and cannot be substituted for the order required in Minn. Stat. § 13.43, subd. 4. Data classified as private data cannot be disclosed except as specified under the GDPA. The requirement of a court order before disclosure of personnel private data provides a court the opportunity to limit the disclosure of potentially sensitive information by the imposi-

tion of protective safeguards, if appropriate.

## DECISION

The order denying the Commissioner's motion to compel disclosure of information sought in the subpoena is reversed. A subpoena does not constitute nor can it be substituted for a court order under Minn. Stat. § 13.43, subd. 4. The trial court shall order the City of St. Paul to provide the Commissioner the information requested in the subpoena. The order shall incorporate protective safeguards consistent with this opinion.

Reversed.