**ANNANDALE ADVOCATE, Respondent,**

v.

**CITY OF ANNANDALE, Appellant,**

**William Ledwein, Appellant.**

No. CX–87–1583.

Court of Appeals of Minnesota.

Feb. 2, 1988.

Review Granted April 15, 1988.

Mark R. Anfinson, Minneapolis, for Annandale Advocate.

John Scherer, St. Cloud, for City of Annandale.

Deborah Ellis, Thomson, Hawkins & Ellis, Ltd., St. Paul, for William Ledwein.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and STONE,* JJ.

## OPINION

HUSPENI, Judge.

The City of Annandale carried out an investigation of William Ledwein, appellant, regarding allegations of incompetency and misconduct in his position as Annandale Chief of Police. Subsequently, at a closed meeting, the city council reviewed the investigative report and passed a resolution to discharge him. Appellant, a vet-

_____

* Acting as judge of the Court of Appeals by ap-

eran, requested a hearing in accordance with the Veteran's Preference Act.

Respondent, Annandale Advocate, a local newspaper, then requested the release of data in the investigative report. When the city denied the request, the newspaper moved for an order releasing the information. Appellant requests reversal of the trial court order releasing portions of the investigative report. We affirm.

## FACTS

On October 23, 1986, appellant was indicted for the reckless discharge of a firearm. The next month, the city council ordered an investigation of appellant's conduct as Chief of Police. The investigative report was submitted to the city council in February of 1987. That month, the city council held a closed meeting to review the report. After discussion, the city council adopted a resolution to discharge appellant as Chief of Police. Appellant was notified of the city's intent to terminate his employment and was suspended with pay.

On April 27, 1987, appellant, an honorably discharged veteran, requested review of the city council's decision pursuant to the Veterans Preference Act. A hearing was tentatively set for October of 1987.

Subsequently, respondent requested access to the investigative report, which the city council denied. In July of 1987, respondent moved for an order compelling release of the document. The trial court reviewed the investigative report *in camera* and later conducted a hearing. Although appellant was not a party to the action, he was permitted to appear at the hearing through his attorney.

The trial court concluded that the investigative report was subject to the "Minnesota Governmental Practices Act, Minn.Stat. § 13.43 which provides that personnel data on current and former employees relating to the final disposition of any disciplinary action and the supporting documentation for that action are public data." In addition, the trial court held:

pointment pursuant to Minn. Const. art. 6, § 2.

The City Council's resolution of February 27, 1987 to discharge [appellant] as Chief of Police of the City of Annandale was a final disposition of the disciplinary action being taken against [appellant] in so far as the City Council's authority was concerned. * * *

On July 31, 1987, the trial court ordered the release of the investigative report after the deletion of specific portions of the report which contained information regarding allegations of sexual misconduct against appellant and contained matters subject to the attorney-client privilege of the city council.[1] The order was stayed to permit appellant to perfect an appeal.

Appellant requests reversal of the trial court order, contending that the contents of the document are protected pending the final outcome of the hearing before the Veterans Preference Board. At oral argument, this court raised the question of whether the city council meeting should have been open pursuant to Minnesota's Open Meeting Law and requested briefing on the issue. Counsel for each party subsequently submitted letter briefs which we considered in reaching our decision.

## ISSUES

1. Did the trial court err when it ordered the city of Annandale to grant the Annandale Advocate access to the investigative report on the city's Chief of Police?

2. Was the city council without authority when it closed a meeting at which it discussed an investigative report on the city's Chief of Police?

## ANALYSIS

This case involves the interrelation between the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1984); the Government Data Practices Act, Minn.Stat. §§ 13.-39 and 13.43 (1985); and the Veterans Preference Act, Minn.Stat. § 197.46 (1986).

### I.

█ The trial court found that the city council's decision to terminate appellant's employment was "final" and that as a result the investigative report was public data. The personnel data section of the Government Data Practices Act, Minn.Stat. § 13.43 provides:

> Subdivision 1. As used in this section, "personnel data" means data on individuals collected because the individual is or was an employee of or an applicant for employment by * * * [a] political subdivision * * *.

> Subd. 2. Public data. Except for employees described in subdivision 5, *the following personnel data* on current and former employees * * * [of a] political subdivision * * * *is public:* * * * *the final disposition of any disciplinary action and supporting documentation* * * *.

> Subd. 4. All other personnel data is private data on individuals but may be released pursuant to a court order.

*Id.* (emphasis supplied).

Appellant argues that because a hearing is scheduled before the Veterans Preference Board, the city council's decision cannot be final. The Veterans Preference Act, Minn.Stat. § 197.46, provides that a veteran has a right to a hearing before the board after receipt of a written notice of intent to discharge the veteran from employment. In *Matter of Schrader*, 394 N.W.2d 796 (Minn.1986), the supreme court held that the Veterans Preference Board "has the power to fashion a remedy other than dismissal if the evidence presents extenuating circumstances." *Id.* at 801. Consequently, that board has authority to reverse the city council's decision to terminate appellant's employment as Chief of Police. We note that the hearing before the Veteran's Preference Board is a necessary step in the exhaustion of a veteran's administrative remedies. Should the veteran fail to request a hearing within the statutory 60–day period, the right to a hearing before the board and to all other available remedies for reinstatement is waived. Minn.Stat. § 197.46.

---

1. Subsequently, the city waived its attorney-client privilege.

Review of the Government Data Practices Act indicates that Minn.Stat. § 13.43 applies only to the city council and not to the Veteran's Preference Board. The Veteran's Preference Board hearing in no way affects the finality of the city council's decision pursuant to Minn.Stat. § 13.43. We conclude that the city council's decision in these disciplinary proceedings was "final" for the purposes of the Act. The trial court, therefore, properly ordered release of the investigative data after excising those portions which it determined should be protected.

## II.

■ We next address the issue raised by this court at oral argument. The purposes of the Open Meeting Law were stated by the supreme court in *St. Cloud Newspapers, Inc. v. District 742 Community Schools*, 332 N.W.2d 1 (Minn.1983):

(1) [T]o prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences, * * *, (2) to assure the public's right to be informed, * * *, and (3) to afford the public an opportunity to present its views to the board, * * *.

*Id.* at 4 (citations omitted). The statute was enacted for the public benefit and should be liberally construed. *Id.* at 4–5. A liberal construction includes a presumption of openness subject to the "rare and carefully restrained exception." *Id.* at 5. *See also Itasca County Board of Commissioners v. Olson*, 372 N.W.2d 804, 807 (Minn.Ct.App.1985).

Minnesota's Open Meeting Law, Minn. Stat. § 471.705, subd. 1 provides:

Except as otherwise expressly provided by statute, all meetings, including executive sessions * * * [of] the governing body of any * * * city, * * * shall be open to the public[.] * * * This section shall not apply to any state agency, board, or commission when exercising quasi-judicial functions involving disciplinary proceedings.

*Id.* As a political subdivision, the city of Annandale is subject to the provisions of the Open Meeting Law. Accordingly, the city is required to conduct its business at meetings which are open to the public unless the business to be conducted comes under an exception to the Open Meeting Law. *Itasca*, 372 N.W.2d at 807.

We have reviewed Minnesota's Open Meeting statute and agree with the trial court's conclusion that "the City of Annandale was not acting as a state agency, board or commission exercising quasi-judicial functions involving disciplinary proceedings" under section 471.705, subd. 1. The trial court's decision to release the contents of the report was based wholly upon the final nature of the city council decision to notify appellant of its intent to terminate his employment. However, the decision could have been based upon the statutory mandate that the city council meeting should have been open.

Because the city council meeting did not fall within the "state agency, board or commission" exception, the disciplinary proceedings in this case were subject to the provisions of the Open Meeting Law. Furthermore, the disciplinary proceedings in this case do not fall within a subdivisional exception to the Open Meeting Law. In addition, there is nothing in the record which indicates that the city council relied upon any other statutory exception to the Act. We therefore conclude the city council had no authority to close the meeting at which the investigative report was reviewed.

■ Prior to the city council meeting, the investigative data concerning the city's Chief of Police was classified as private under the Government Data Practices Act, Minn.Stat. §§ 13.02, subds. 5 and 12, and 13.43. However, because the data was discussed at a city council meeting that should have been open, we must consider the impact of Minn.Stat. § 13.03, subd. 4 on the classification of the data. Section 13.03, subd. 4 states in pertinent part:

*Change in classification of data.* The classification of data in the possession of an agency shall change if it is required to

do so to comply with either judicial or administrative rules pertaining to the conduct of legal actions or with a specific statute applicable to the data in the possession of the disseminating or receiving agency.

\* \* \* \* \* \*

*Id.* The *Itasca* court stated:

[A]lthough personnel data deemed private by the Data Practices Act should remain private under most circumstances, section 13.03, subd. 4, requires that classification to change to public when it is reasonably necessary for a public body subject to the Open Meeting Law to discuss the data.

*Itasca,* 372 N.W.2d at 809. This court ruled that section 13.03, subd. 4 mandates that private data is reclassified as public for the purposes of an open meeting at which the performance of a managerial or supervisory employee is discussed. *Id.* In *Itasca,* a hospital administrator claimed that a hospital board meeting at which his work was to be appraised should be closed on the basis that section 13.43, subd. 4, operated as an exception to the Open Meeting Law. The hospital board sought clarification by the trial court, which determined that section 13.43 did operate as an exception. This court reversed the trial court on that issue and ruled that the special provisions of the Open Meeting Law limiting the way in which an exception may be created prevail over the general language in the Data Privacy Act. *Id.* at 808.

In *Itasca* this court stated that its interpretation harmonized section 13.43, subd. 4, with the Open Meeting Law and gave effect to the primary purposes of each:

The need for discussion of private personnel data will generally arise only with regard to managerial or supervisory employees because their performance is of particular significance to the public. The public has an obvious and important interest in obtaining a full disclosure of information relevant to the job performance of its high-level public employees. Those who accept such positions know they become public figures and must have lower expectations of privacy re-

garding data relevant to their performance.

*Id.* at 809.

The record here indicates that the city's attorney was uncertain whether *Itasca* would apply to the disciplinary proceedings in this case. We believe, however, that because the disciplinary proceedings of the city council do not fall within the definition of disciplinary proceedings of "any state agency, board or commission," and the proceedings did not fall within any other exception to the Open Meeting Law, the rule in *Itasca* applies. Therefore, because he was Chief of Police, appellant's job performance was subject to public scrutiny. Consequently, as with the appraisal of the hospital administrator in *Itasca,* the investigation of allegations of misconduct by the Chief of Police should have been public.

### DECISION

The trial court properly ordered the City of Annandale to release to the Annandale Advocate portions of its investigative report on the city's Chief of Police.

Affirmed.