**ANNANDALE ADVOCATE, Respondent,**

v.

**CITY OF ANNANDALE, Respondent,**

**William Ledwein, petitioner, Appellant.**

**No. CX–87–1583.**

Supreme Court of Minnesota.

Jan. 20, 1989.
Rehearing Denied March 31, 1989.

Deborah Ellis, St. Paul, for William Ledwein.

John Scherer, St. Cloud, for City of Annandale.

Mark R. Anfinson, Minneapolis, for Annandale Advocate.

Gregg M. Corwin, St. Louis Park, amicus curiae, for AFSCME.

Thomas L. Grundhoefer, St. Paul, amicus curiae, for League of Minnesota Cities.

YETKA, Justice.

This case comes before us on appeal from a decision of the Minnesota Court of Appeals which determined that the City of Annandale should make public, pursuant to the Minnesota Government Data Practices Act and the Minnesota Open Meeting Law, an investigative report regarding the alleged misconduct of Annandale's chief of police. The report was the basis for discharge of the chief, who appealed his discharge under the Minnesota Veterans Preference Act and then resigned before a new hearing pursuant to that act could be held.

We reverse the court of appeals and hold that the investigative report must remain private.

The facts of this case are not in dispute. On October 23, 1986, William Ledwein, Chief of Police for the City of Annandale, Minnesota, was indicted by a Wright County grand jury for reckless discharge of a handgun. In November of 1986, the Annandale City Council retained John Scherer, an attorney with a private law firm, to conduct an investigation into other allegations of misconduct and incompetence against Ledwein. Mr. Scherer subsequently submitted an investigative report which was considered at a February 27, 1987 meeting of the city council. The city council closed this meeting, believing that the

Minnesota Government Data Practices Act required employee disciplinary proceedings to be closed. Based on the investigative report and ensuing discussion, the city council passed a resolution discharging Ledwein as chief of police subject to Ledwein's right to a Veterans Preference Board hearing. Immediately after the city council meeting, the investigative reports were collected and were not made available to the public. On April 27, 1987, Ledwein, an honorably discharged veteran, requested a review of the city council's decision pursuant to Minn.Stat. § 197.46 of the Veterans Preference Act. A hearing was tentatively set for October of 1987.

*The Annandale Advocate,* (hereinafter *"The Advocate"*), a local newspaper, requested access to the investigative report discussed at the city council meeting. The Annandale City Council denied the request. On July 15, 1987, *The Advocate* moved the Wright County District Court for an order compelling release of the investigative report. On July 22, 1987, all parties agreed that a copy of the investigative report should be provided to the district court for its *in camera* review. On July 30, 1987, the district court ordered that the investigative report, except information which identified alleged victims of sexual misconduct and that protected by the city's attorney-client privilege, be released to the public. As a basis for this order, the district court ruled that the meeting at which the city council voted to terminate Ledwein was a "final disposition" of a disciplinary action under Minn.Stat. § 13.43, subd. 2 (1986) and, therefore, the investigative report was public data.

The Minnesota Court of Appeals affirmed the district court's ruling that the city council's meeting was the "final disposition" of a disciplinary action and the investigative report was thus public data. *Annandale Advocate v. City of Annandale,* 418 N.W.2d 522, 525 (Minn.App.1988). At oral argument, the court of appeals raised the question of whether the investigative report could also have been made public under Minnesota's open meeting law. After further briefing by the parties on this issue, the court of appeals held that the Annandale City Council was without authority to close the meeting. Therefore, as the meeting was required to be open, the data in the investigative report was reclassified from private to public. *Id.* at 525–26.

On appeal, Ledwein is disputing the court of appeals' decision to release the investigative report. The City of Annandale, while a named party, does not dispute the release of the report and only seeks insulation from possible liability under the Data Practices Act. Amicus League of Minnesota Cities is also not disputing the report's release, but is concerned with the establishment of guidelines for its member cities. Amicus AFSCME argues that the appellate court opinion significantly erodes both procedural and substantive due process protection and privacy and liberty rights of public employees.

The issues raised on appeal are:

I. Does Ledwein have standing to appeal the release of the investigative report?

II. Was the city council's decision to terminate Ledwein a "final disposition" under Minn.Stat. § 13.43 (1986) when Ledwein was entitled to an additional hearing under the Veterans Preference Act?

III. Was the Annandale City Council meeting improperly closed?

IV. Does Minn.Stat. § 471.705, subd. 1b (1986) provide an express exception to the Open Meeting Law?

The unusual procedural aspect of this case presents the threshold issue of standing. The record reveals that Ledwein was not, at anytime, a named party in *The Advocate*'s action nor did he at anytime seek to intervene. Ledwein was, however, sent a copy of *The Advocate*'s motion and other court papers and was allowed to appear and argue at the district court hearing. The district court ruled, though not a basis for its decision, that Ledwein lacked standing to oppose the release of the report. The court of appeals did not address the question of standing. Neither party appealed the issue to this court although

*The Advocate*, in its brief, does question whether Ledwein had standing to oppose the release of the report.

 The question of standing, which can be raised by this court on its own motion, is essential to our exercise of jurisdiction. *See, e.g., Izaak Walton League of Am. Endowment, Inc. v. State Dep't of Natural Resources*, 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977). In Minnesota, a party whose legitimate interest is "injured in fact" has standing unless the legislature has indicated that the interest asserted is not to be protected. *Snyder's Drug Stores, Inc. v. Minnesota State Bd. of Pharmacy*, 301 Minn. 28, 32, 221 N.W.2d 162, 165 (1974).

 We find that Ledwein has standing to oppose the release of the investigative report. Clearly, the release of the investigative report would cause an "injury in fact" to Ledwein's legitimate interests of reputation and privacy. Furthermore, Minn.Stat. § 13.08, subd. 4 (1986), which gives parties the right to bring an action to compel compliance with the Data Practices Act, demonstrates that the legislature has recognized a government employee's interest in preserving the confidentiality of personnel data.[1]

 The court of appeals found that the Annandale City Council meeting at which Ledwein was terminated was a "final disposition" of a disciplinary proceeding. Thus, the investigatory report, as supporting documentation, was public data. *City of Annandale*, 418 N.W.2d at 525. On appeal, Ledwein contends that the city council

meeting could not have been a "final disposition" of this matter because he was entitled to an additional hearing under the Veterans Preference Act.

The Minnesota Government Data Practices Act mandates that all data maintained by a public body shall be accessible to the public unless expressly classified by law as non-public or private. Minn.Stat. § 13.03, subd. 1 (1986). Contrarily, the provision regarding personnel data, Minn.Stat. § 13.43 (1986), provides that all personnel data on public employees is private unless specifically listed otherwise. The applicable portions of Minn.Stat. § 13.43 read as follows:

> Except for employees described in subdivision 5, the following personnel data on current and former employees, volunteers and independent contractors of a state agency, statewide system, or political subdivision and members of advisory boards or commissions is public * * * [including] *the final disposition of any disciplinary action and supporting documentation* * * *.
>
> * * * * * *
>
> All other personnel data is private data on individuals but may be released pursuant to a court order.

*Id.*, subs. 2, 4 (emphasis added). Ledwein contends that, because he had the right to seek further review of the city council's decision before a Veterans Preference Board, the city council decision cannot be a final disposition. Minn.Stat. § 197.46 (1986) of the Veterans Preference Act pro-

---

1. The dissent argues that we should follow *Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988), and bar Ledwein's appeal. We question whether this United States Supreme Court decision regarding federal procedural laws should bind or guide this court. It is unnecessary to make this determination, however, because a closer review of *Marino* reveals that it is distinguishable from the present case. In *Marino*, a federal district court dismissed an appeal because petitioners were not parties to the underlying lawsuit and did not intervene properly. *Id.* at ——, 108 S.Ct. at 587. The United States Supreme Court affirmed, citing the "well-settled" rule "that only parties to a lawsuit, or those that properly became parties, may appeal an adverse judgment" and adding:

"We think the better practice is for such a nonparty to seek intervention for purposes of appeal * * *." *Id.* From the above language, it appears that the United States Supreme Court intended to limit the intervention requirement to non-parties. Under Minnesota law, however, Ledwein was a party by virtue of his participation in the lower court proceedings and his obvious interest in the outcome. *See J.L. Shiely Co. v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 252 Minn. 535, 541, 91 N.W.2d 116, 120 (1958) (actor who participates without formal pleadings or intervention as active contestant on the merits is bound and affected with respect to asserted interest peculiar to the actor is a party to the proceeding).

vides that an honorably discharged veteran employed by a government body has the right to a hearing before the Veterans Preference Board after receipt of notice to discharge the veteran. A board authorized under the Veterans Preference Act may modify a disciplinary sanction and may fashion a remedy other than dismissal if the evidence presents extenuating circumstances. *Matter of Schrader*, 394 N.W.2d 796, 801–02 (Minn.1986).

Despite Ledwein's exercise of his right to a Veterans Preference Board hearing, the court of appeals held that the Annandale City Council's resolution to discharge Ledwein was a "final disposition" because:

> Review of the Government Data Practices Act indicates that Minn.Stat. § 13.43 applies only to the city council and not to the Veteran's Preference Board. The Veteran's Preference Board hearing in no way affects the finality of the city council's decision pursuant to Minn.Stat. § 13.43. We conclude that the city council's decision in these disciplinary proceedings was "final" for the purposes of the Act.

*City of Annandale*, 418 N.W.2d at 525. In its use of the phrases "finality of the city council's decision" and "the city council's decision * * * was final for the purposes of the Act," the court of appeals appears to assume that "final disposition" is synonymous with "final decision." A review of case law and legal definitions of "final disposition" and "final decision" demonstrates that this assumption is incorrect.

*Black's Law Dictionary* defines "final decision" as:

> "One which leaves nothing open to further dispute and which sets at rest cause of action between parties. Judgment or decree which terminates action in court which renders it. One which settles rights of parties respecting the subject-matter of the suit and which concludes them until it is reversed or set aside."

*Black's Law Dictionary* 567 (5th ed. 1979). "Final disposition" is defined as: "Such a conclusive determination of the subject-matter that after the award, judgment, or decision is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon." *Id.* These definitions indicate that the phrase "final disposition" has a separate and different meaning than "final decision." Furthermore, while this court has not yet defined "final disposition," other courts have. In *Ex parte Russell*, 80 U.S. (13 Wall.) 664, 20 L.Ed. 632 (1871), the United States Supreme Court held that "final disposition" meant the final determination of a suit on appeal or in a court of claims. *Id.* at 669. The Florida Supreme Court has held that "final disposition" means either acquittal or ultimate disposition on remand. *Florida Bar v. Craig*, 238 So.2d 78, 80 (Fla.1970). *See also Quarture v. Allegheny County*, 141 Pa.Super. 356, 14 A.2d 575 (1940), stating that a final disposition is "such a conclusive determination of the subject-matter * * * that after the award is made nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon." *Id.* at 362, 14 A.2d at 578 (citing *Bouvier's Law Dictionary* 414 (1934)).

It is apparent from the legal dictionary and case law definitions that "final decision" refers to a last decision of a person or body on a matter while "final disposition" refers to the last and final determination of the matter itself. Clearly, the city council's resolution to terminate Ledwein was its final decision, but it was not a "final disposition" of his case because Ledwein had exercised his right under the Veterans Preference Act to have a further hearing on the matter.

*The Advocate* asserts that, to give the phrase "final disposition" such an interpretation would be contrary to both the "plain meaning" and "obvious purpose" of Minn. Stat. § 13.43, subd. 2 (1986), especially in cases involving higher ranking officials.

Both of *The Advocate*'s contentions fail. First, it is clear from legal dictionary and case law definitions of "final disposition" that the plain meaning of "final disposition" supports Ledwein's position rather than *The Advocate*'s. Second, the "obvious purpose" of Minn.Stat. § 13.43 appears

to be the protection of personnel data. This is evidenced by the fact that the legislature, while providing that all government data is public unless specifically classified otherwise, provided in Minn.Stat. § 13.43 that all personnel data on public employees is private unless specifically listed otherwise. Minn.Stat. § 13.43, subd. 4 (1986). It is readily apparent that the legislature intended to extend substantial privacy protection to personnel data concerning its employees. Therefore, it is reasonable to conclude that the legislature did not want data concerning the discipline of a government employee released until after the "final disposition" of the matter.

*The Advocate* is correct when it asserts that such an interpretation would result in delay of months and even years before disciplinary records could be released to the public. Indeed, in the present case, the investigative report may never become public since, months before his scheduled Veterans Preference Board hearing, Ledwein agreed to resign in exchange for the city's withdrawal of termination proceedings. While this may be true, the legislature has expressly indicated that confidential personnel data of government employees shall not become public until after a final disposition of the disciplinary proceeding. This comports with the legislature's intent to accord substantial privacy protection to personnel data. We, therefore, must find that the resolution passed at the Annandale City Council meeting was not a "final disposition" of this matter under Minn.Stat. § 13.43, subd. 2.[2]

During oral argument at the court of appeals, the issue was raised as to whether the Annandale City Council meeting at which Ledwein was terminated should have been open pursuant to the Minnesota Open Meeting Law. *City of Annandale*, 418 N.W.2d at 524. After receiving and considering additional briefs, the court of appeals held that the City of Annandale did not have authority to close the meeting at which the investigative report was discussed. *Id.* at 525.

On appeal, Ledwein argues that the Open Meeting Law did not require that the meeting be open to the public. The resolution of this issue on appeal involves interpretation of Minn.Stat. § 471.705, subd. 1 (1986)—the Minnesota Open Meeting Law.

Minn.Stat. § 471.705, subd. 1 (1986) lists the government bodies subject to the Open Meeting Law as follows:

> Except as otherwise expressly provided by statute, all meetings, including executive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, *and the governing body of any school district however organized, unorganized territory, county, city, town,* or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public * * *.

*Id.* (emphasis added). Minn.Stat. § 471.705, subd. 1 goes on to list exceptions to the coverage of the Open Meeting Law, one of which is:

> This section shall not apply to any state agency, board, or commission when exercising quasi-judicial functions involving disciplinary proceedings.

---

2. The dissent argues that the settlement between Ledwein and the City of Annandale, in which the city agreed to dismiss the disciplinary action in exchange for Ledwein's resignation, should be considered a "final disposition." While such an interpretation is plausible, its adoption would substantially infringe the privacy rights of public employees and serve to prevent settlement in most employee discipline cases.

We have stated on numerous occasions that settlement of litigation is highly favored. *See, e.g., Johnson v. St. Paul Ins. Co.*, 305 N.W.2d 571, 573 (1981); *Frey v. Snelgrove*, 269 N.W.2d 918, 922 (1978). The public has a strong interest in settlement of employee discipline matters because it permits governing bodies to discharge troublesome employees with a minimum of cost and aggravation. At the same time, it allows employees the opportunity to avoid adverse publicity. Release of confidential personnel data after such a settlement, but before a final disposition of the disciplinary matter, would remove much of the incentive for employees to settle. The dissent would remove the entire settlement mechanism by allowing release of the report in this case. Clearly, the public's interest is better served by encouraging settlements while, at the same time, expecting governing bodies to make responsible and intelligent settlement decisions.

*Id.* The court of appeals held that the Annandale City Council, while exercising quasi-judicial functions involving disciplinary proceedings, was not acting as a state agency, board or commission; therefore, its meeting was required to be open. *City of Annandale,* 418 N.W.2d at 525.

On appeal, Ledwein contends that the legislature did not intend that the terms "state agency, board or commission" be given such a narrow interpretation. Rather, he argues that they should be read to include city council meetings. In support of this claim, Ledwein asserts that governing bodies other than state agencies, boards or commissions have traditionally closed meetings at which disciplinary actions were taken.

The language of section 471.705, subdivision 1 demonstrates that the legislature knew how to incorporate a specific reference to cities and other local government bodies in the Open Meeting Law. It also demonstrates that, if the legislature had wanted to exempt city governments from the Open Meeting Law, it would have so indicated.

A strong argument can be made that the legislature could not have intended one rule for state agencies, boards and commissions and another rule for local governments. It is certainly reasonable to believe that the legislature would intend one rule to apply to all public bodies. However, a review of the contemporary legislative history shows this was not the legislature's intent here.

■ Legislative proceedings reveal that the phrase "or other governing bodies" and similar language was considered in order to include local governments within the exception to the Open Meeting Law contained in section 471.705, subdivision 1. Hearings on House File No. 2037 before Senate as Committee of the Whole, 1973 Minn.Legis., May 2 (audiotape). In the final version of the bill as passed, no such language was included. *See* Act of May 24, 1973, ch. 680, § 1, 1973 Minn.Laws 1834–35. The omission of such language, along with the final version of the statute itself, indicates that the legislature intended to include only state agencies, boards and commissions

within the quasi-judicial function exception of section 471.705, subdivision 1. The question then becomes: What happens when it is necessary to discuss data classified as private by the Data Practices Act at a meeting required to be open under the Open Meeting Law?

The court of appeals resolved this question by holding that, when otherwise private personnel data regarding supervisory or managerial employees is discussed at a meeting required to be open, the classification of the data changes from private to public. The court of appeals based its decision to reclassify the data on its earlier decision in *Itasca County Bd. of Comm'rs v. Olson,* 372 N.W.2d 804, 809 (Minn.App. 1985). *City of Annandale,* 418 N.W.2d at 526.

In *Itasca,* the Board of Commissioners sought to evaluate the performance of an employee. Perceiving the same conflict between the data practices act and the Open Meeting Law which exists in the present case, the board sought a declaratory judgment of its rights and responsibilities. *Itasca,* 372 N.W.2d at 806. The *Itasca* court reversed the trial court's finding that data classified as private under the Data Practices Act was exempt from the requirements of the Open Meeting Law and ruled that, under Minn.Stat. § 13.03, subd. 4 (1984), such private data must be reclassified as public when it is reasonably necessary for a public body subject to the Open Meeting Law to discuss the data. *Id.* at 809.

The applicable portion of Minn.Stat. § 13.03, subd. 4 (1986) provides:

The classification of data in the possession of an agency shall change if it is required to do so to comply with either judicial or administrative rules pertaining to the conduct of legal actions or with a specific statute applicable to the data in the possession of the disseminating or receiving agency.

*Id.* While the Open Meeting Law appears to be a "specific statute applicable to the data," a closer look at the *Itasca* decision suggests that Minn.Stat. § 13.03, subd. 4 is not applicable to the present case.

In *Itasca*, the court of appeals noted that every recognized statutory exception to the Open Meeting Law contained explicit language indicating its purpose. *Itasca*, 372 N.W.2d at 808. The court of appeals then considered whether Minn.Stat. § 13.43, subd. 4 contained explicit language which would operate as an exception to the Open Meeting Law. *Id.* The court of appeals ruled that, because Minn.Stat. § 13.43, subd. 4 provides in only general terms that personnel data should normally be private, it was not specific enough to qualify as an exception to the Open Meeting Law. *Id.* Only after failing to find an express exception to the Open Meeting Law did the court apply Minn.Stat. § 13.03, subd. 4 to reclassify the data. *Id.* at 808–09.

In determining that no explicit Open Meeting Law exception existed for information classified as private under the Data Practices Act, the court of appeals in *Itasca* did not consider subdivision 1b of Minn. Stat. § 471.705 (1986), which provides:

> In any meeting which under subdivision 1 must be open to the public, at least one copy of any printed materials relating to the agenda items of the meeting which are prepared or distributed by or at the direction of the governing body or its employees and which are:
>
> (1) distributed at the meeting to all members of the governing body;
>
> (2) distributed before the meeting to all members; or
>
> (3) available in the meeting room to all members;
>
> shall be available in the meeting room for inspection by the public. The materials shall be available to the public while the governing body considers their subject matter. *This subdivision does not apply to materials classified by law as other than public as defined in chapter 13 * * *.*

*Id.* (emphasis added.)

The intended meaning of section 471.705, subdivision 1b is not entirely clear. There are two possible interpretations. The first is that Minn.Stat. § 471.705, subd. 1b prohibits only the dissemination of written materials including private data and not the oral discussion of such data. Under this construction, the meeting would be subject to all the provisions of the open meeting law except that written materials on private data could not be distributed.

The other interpretation, advanced by amicus League of Minnesota Cities, is that the language "[t]his subdivision does not apply to materials classified by law as other than public as defined in chapter 13" creates an exception to the Open Meeting Law anytime it is necessary for a governing body to discuss non-public or private data. Under this interpretation, the investigative report would not be subject to the Open Meeting Law and would not be reclassified under Minn.Stat. § 13.03, subd. 4.

Contemporary legislative history, again in the form of audiotapes of legislative proceedings, provides little guidance in interpreting section 471.705, subdivision 1b. In the following excerpt, Senator Donna Peterson, the author of the bill which became section 471.705, subdivision 1b, responds to concerns that her bill does not sufficiently protect delicate and embarrassing personnel information of government employees:

> [T]hat's exactly why this language is in here, so that currently any materials that are classified as not open to the public would remain that way, and even though that material may be discussed at the meeting, that material could not be made available to the public. And that's why that language is in here; it's to clarify that. So anything that is not open to the public now would remain that way.

Hearings on Senate File No. 482, Statement of Senator Donna C. Peterson during Special Orders of the Senate, 1983 Minn. Legis., April 27 (audiotape). Senator Peterson's statement expresses both the intent that private data be discussed at public meetings and that private data remain unavailable to the public. These two intentions are clearly contradictory; how can information remain private if it is discussed at a public meeting? While Senator Peterson's statement appears to be ambiguous and inconclusive as to legislative intent, she asserts no less than three times that infor-

mation classified as private should remain private. This suggests that the legislature's primary concern was to prevent data classified as private from being released to the public, which would support interpreting section 471.705, subdivision 1b as an exception to the Open Meeting Law, and several considerations support such an interpretation.

It is presumed that the legislature "does not intend a result that is absurd, impossible of execution, or unreasonable." Minn. Stat. § 645.17(1) (1986). To construe Minn. Stat. § 471.705, subd. 1b as forbidding dissemination of written materials regarding private data, but allowing oral discussion of the same data would be unreasonable and perhaps absurd. Such a construction would render the reference to chapter 13 meaningless because any document classified as private could be read aloud at a public meeting. Unless Minn.Stat. § 471.705, subd. 1b is read to require closure of meetings at which private data is discussed, the protections given by the Data Practices Act become illusory.

Interpreting Minn.Stat. § 471.705, subd. 1b as an express exception to the Open Meeting Law is consistent with the legislature's obvious intent to give the personnel data of public employees substantial privacy protections.

Additionally, interpreting Minn.Stat. § 471.705, subd. 1b as an express exception to the Open Meeting Law is not inconsistent with the policy of openness in government because, in both the Open Meeting Law and the Data Practices Act, the legislature has indicated that openness in government is an important public policy. *See* Minn.Stat. §§ 471.705, subd. 1b; 13.03, subd. 1 (1986). Similarly, the legislature, by providing exceptions to each statute, has indicated that, in certain situations, an equally important public policy is served by denying public access. *See generally State by Johnson v. Colonna*, 371 N.W.2d 629, 632 (Minn.App.1985) (the public has a strong interest in preserving the confidentiality of private personnel data). Because both the Open Meeting Law and the Data Practices Act provide for few exceptions to

public access and openness, there is little danger that excepting data classified as private from the Open Meeting Law will endanger the public policy of openness in government.

*The Advocate* contends that interpreting Minn.Stat. § 471.705, subd. 1 as an exception to the Open Meeting Law would be improper for two reasons: First, *The Advocate* argues that such an interpretation would amount to a repeal of the Open Meeting Law because the complexities of the Data Practices Act would confuse public officials and lead them to violate the Open Meeting Law rather than face the severe penalties from a violation of the Data Practices Act. Additionally, *The Advocate* contends that such an interpretation would lead to abuse by governing bodies who would be able to close entire meetings merely by discussing a small bit of private data.

*The Advocate*'s concerns, though well taken, are easily addressed. The Data Practices Act is detailed and lengthy, yet is not any more difficult to apply than other statutes. In fact, the Data Practices Act's presumption of openness allows for easier application because government bodies may assume data is classified as public unless specifically listed otherwise. Minn. Stat. § 13.03, subd. 1 (1986). Moreover, a government body would normally be required to ascertain the classification of data before releasing it to the public. Therefore, it is not unreasonable to require that a government body ascertain the classification of data before discussing it at a public meeting.

 With regard to *The Advocate*'s second concern, potential abuse of a data privacy exception to the Open Meeting Law can be minimized by closing only those portions of the meeting in which private data need be discussed. All other portions of the meeting would be public pursuant to the Open Meeting Law. Applying the exception to the facts of the present case, the Annandale City Council meeting in question would have been required to be open. Adoption of a formal motion to discharge Ledwein, as well as other public data appli-

cable to the discharge, would be publicly discussed. When the city council needed to discuss the investigative report or other data classified as private, however, that portion of the meeting would have to be closed. The meeting would remain closed only so long as the private material was being discussed. Further discussion of any matter not classified as private would require immediate reopening of the meeting.

It is important to emphasize the narrowness of this exception. Only discussion of the actual content of private data would necessitate closing a meeting. Other information pertaining to the investigative report, including the existence of the report, the council's consideration of it, the role the report had in the council's decison, and even the terms of the settlement with Ledwein would not be kept from the public.

We recognize that the above procedure may inconvenience participants in public meetings. Nevertheless, we feel that it is the best method of utilizing the exception created by Minn.Stat. § 471.705, subd. 1b for two reasons: First, unlike allowing veiled references to the private material, the above procedure permits thorough discussion and debate of private data which may be pivotal to a government body's decision. Second, where two statutes conflict, the two shall be construed, if possible, so that effect may be given to both. *Wichelman v. Messner,* 250 Minn. 88, 118, 83 N.W.2d 800, 823 (1957); Minn.Stat. § 645.26, subd. 1 (1986). Closing only a portion of the meeting best reconciles the Data Practices Act with the Open Meeting Law and gives effect to both statutes.

The question of how to discuss private data at open meetings is determinative in this case and involves difficult questions of statutory interpretation and public policy. We find that both public policy and legislative intent favor the exceptions of private data from the Open Meeting Law. Therefore, we reverse the court of appeals and find that Minn.Stat. § 471.705, subd. 1b mandates the closure of the portion of a public meeting in which data classified as private by the Data Practices Act is discussed.

We do so fully realizing that, under this decision, the investigative report, which contains information of great interest to the citizens of Annandale, may never be released to the public. The dissent's concern regarding the seriousness of Ledwein's purported misconduct and the probability that he will suffer little more than the loss of his job is certainly understandable. However, it is apparent that Annandale city officials believed that avoiding the expense and aggravation of protracted litigation with Ledwein outweighed the citizens' right to know of their police chief's conduct. It is crucial to remember that the report contains allegations against Ledwein which have never been proven in court. Thus, this situation is different from one where the charges are established or proven false in an adversarial setting. It is possible, and may even be the case here, that the mere publication of allegations, even if false, could damage the employee's reputation permanently.

The dissent, in seeking release of the investigative report, fails to give credence to privacy rights of public employees. Though, in this instance, the misconduct appears to be severe, a majority of employee disciplinary matters handled internally will involve job-related and non-criminal misconduct. Therefore, removal of privacy protections is not only unnecessary, but is contrary to legislative intent.

The zeal with which the dissent advocates openness in government is admirable. Nevertheless, the dissent gives our decision far too broad an interpretation. Under our decision, meetings may be closed only when data classified as private is being discussed. Such a requirement does no more than prevent public disclosure of data that the legislature has already determined is to be withheld from the public. Because the legislature has accorded private or nonpublic status to very few types of data, there is little danger of the doors of government being slammed shut.

In conclusion, we fully realize that the statutes we have considered in this opinion may be open to differing interpretations. Our opinion, however, is an attempt to rec-

oncile honestly all applicable statutes without judicial legislation. If the legislature feels that we have failed to interpret its motives properly, then it must clarify these statutes. Accordingly, the court of appeals is reversed and the investigative report shall remain private and may not be released to the media or public.

POPOVICH, Justice (dissenting).

I respectfully dissent because I am troubled where the majority opinion will lead local governments, since it threatens to undermine Minnesota's longstanding commitment to openness in government by allowing governmental bodies to close public meetings whenever information they determine to be private data is discussed. Even the majority admits the statutes involved are open to different interpretations. Majority Op. at 33. In my opinion its interpretation directly contradicts the underlying purpose of the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1986), which is to guarantee the right of citizens to attend meetings and know how governmental decisions affecting their lives are made. Hearings on House File No. 2037 before House Committee on Governmental Operations, 1973 Minn.Legis., May 1 (audiotapes). As Justice Rogosheske said in *Lindahl v. Independent School District No. 306*, 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965): "The purpose of this statute is to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences." The majority bases its decision on language contained in the Minnesota Government Data Practices Act, Minn.Stat. § 13.03 (1986). However, the legislative history of both the Open Meeting Law and the Data Practices Act reflects a serious commitment to openness in government. The majority admits that a policy of open-

ness in government is embodied in both the Open Meeting Law and the Data Practices Act. Majority Op. at 32.

I.

The majority argues that subdivision 1b of Minn.Stat. § 471.705 provides a closure exception under the Open Meeting Law when materials classified by law as other than public, as defined in chapter 13, may be discussed. By creating this exception the majority holds that materials classified by the Data Practices Act as "private data" must not be distributed at a meeting of a governmental body and *in addition* the meeting must be closed when such "private" materials are being discussed. The majority interpets the two statutes by relying on the intricacies of the Data Practices Act,[1] without giving proper weight to the Open Meeting Law. Its decision has the effect of creating more opportunities for closing the doors of government to the public.

The legislative history behind the enactment of subdivision 1b clearly indicates it was not the legislature's intent to close a public meeting when private data was being discussed. The restrictions implemented by the legislature applied only to the *distribution* of the material, not the *discussion* of the material at an open public meeting. As sponsor of the bill, Senator Donna Peterson discussed this issue directly:

Sen. D.C. Peterson: What the bill is saying is merely that any printed materials relating to agenda items of governing bodies, that those agenda items that are handed out to all members of that governing body would also be distributed, or made available, at the meeting, the public meeting.

\* \* \* \* \* \*

1. The Government Data Practices Act, Minn. Stat. § 13.03 (1986), has been criticized as an "imperfect mechanism to deal with an extremely complex issue * * *." Gemberling & Weissman, *Data Privacy: Everything You Wanted to Know About the Minnesota Government Data Practices Act—From "A" to "Z"*, 8 William Mitchell L.Rev. 573, 598 (1982). Minnesota was

the first American jurisdiction to enact a data privacy statute, but as of 1982 no other state had used the Minnesota statute as a model. *Id.* at 574, 598. In 1981 the original author of the Government Data Practices Act introduced a bill that would have replaced this legislation. Senate File 198, 1981 Session.

Sen. Willet: * * * as I read the bill, Sen. Peterson, I see that it applies to all materials either distributed at the meeting or before a meeting, and then that has to be available in the meeting room for all members. I have a concern with the exemption that you have in here that may not be broad enough. It says, "this subdivision does not apply to materials classified by law as other than public." [Subdivision 1b, later amended to add reference to Chapter 13.] As far as I can determine, this would not include a delicate personnel matter.

*　　*　　*　　*　　*　　*

Sen. D.C. Peterson: Mr. President, Sen. Willet, that's exactly why this language is in here, so currently any materials that are classified as not open to the public would remain that way, and *even though that material may be discussed at the meeting, that material could not be made available to the public.*

Hearings on Senate File No. 482, Statements of Senators D.C. Peterson and Willet during Special Orders of the Senate, 1983 Minn.Legis., April 27 (audiotape) (emphasis added). Statements by the sponsor of a bill on the purpose or effect of the legislation are generally to be given some weight in determining the legislature's intent. *Handle With Care v. Dept. of Human Services,* 406 N.W.2d 518, 522 (Minn.1987).

The duty of this court is to give effect to the plain meaning of a statute. *Tuma v. Commissioner of Economic Security,* 386 N.W.2d 702, 706 (Minn.1986). The title of the 1983 statute enacting subdivision 1b limits its application only to the distribution of materials. The title reads: "An act relating to open meetings; requiring availability of certain materials; prescribing penalties; amending Minnesota Statutes 1982, section 471.705, by adding a subdivision." 1983 Minn.Laws ch. 137. The title does not indicate the law provides authority for any governmental body to close a public meeting. Its application is limited to procedures relating only to the distribution of materials.

The majority then argues that allowing the discussion of private material that is not distributed would be an absurd result. Discussion, however, need not reveal private information. In the present matter, all Annandale City Council members were provided with a copy of the investigative report on Chief Ledwein's performance in office. In their public discussion of Ledwein's termination, they need not refer to specific instances of misconduct contained in the report. The public, however, should be allowed to witness the council members casting their votes and to view how they arrived at the decision to terminate. The public has a right to know the council members based their decision on the result of an independent investigation, even if the specifics of the investigation are not revealed.

Even if personal information is revealed, Ledwein and any other individual is guaranteed a public forum in which to refute or discuss the information or charges brought against him. The potential for abuse is much greater under the procedure advocated by the majority. The majority proposes that subdivision 1b "creates an exception to the open meeting law any time it is necessary for a governing body to discuss nonpublic or private data." Majority Op. at 31. This interpretation will not only allow governmental bodies to meet in executive session when considering termination decisions, but also when hiring decisions or any other decisions involving private data are made. Thus, any time an individual is considered for a job, has his or her work performance evaluated, seeks a promotion or is terminated, the decision-making body responsible can render a decision in private if private data is involved. Under the majority's decison the public has no right to demand a public meeting where government officials would be required to account for their decision and answer public concerns. The potential for abuse is too great for this interpretation to be adopted.

The present case exemplifies in particular the need to ensure that the actions of powerful public officials are open to public scrutiny. As the chief of police for the City of Annandale, Ledwein was the primary law enforcement officer for the city and entrusted with enormous power under

the law. With this position comes the responsibility to uphold the public trust. An individual who accepts such a public position does so with the knowledge that his actions are subject to the judgment of those he serves. The allegations of misconduct in this case are serious ones, including possible acts of sexual misconduct against certain female persons. The public has a right to know on what basis the city council has made its decision to terminate and a right to witness the proceedings. Whether allegations are made against a police chief, patrolman, teacher or elected official, the public should be alerted when misconduct may have occurred. As such, the public meeting should be open. For example, Minn.Stat. § 125.12, subd. 9 (1986), provides that a hearing on charges to terminate a teacher may be private at a teacher's request. After the hearing is held, the board must make its decision at a meeting where it considers the results of the hearing and the findings and recommendations of the hearing examiner. Is the meeting where the school board acts now to be closed because private data may be involved? The majority's interpretation of subdivision 1b (which pertains only to the distribution of private materials) allowing a closure of a meeting under the Open Meeting Law will have severe repercussions on governmental openness in this state. It is a misinterpretation of the 1983 law and the author's intent as evidenced by the contemporaneous legislative history.

## II.

Under exceptions to the Data Practices Act, the investigative report on Chief Ledwein is public information and should be released. The Act provides that "the final disposition of any disciplinary action and supporting documentation" are public. Minn.Stat. § 13.43, subd. 2 (1986). The majority argues that the Annandale City Council's decision to terminate Ledwein was not a "final disposition" and therefore the report does not fall under this exception to the Data Practices Act. The majority finds that since Ledwein decided to exercise his right to a Veteran's Preference Hearing the council's decision was not a final disposition of the matter. However, the fact that Ledwein's resignation was submitted and accepted before the Veteran's Preference Hearing was held should be seen as a final disposition of the entire disciplinary proceeding, since there will be no Veteran's Preference Hearing. Under the majority's own definition, Ledwein's resignation would qualify as "a conclusive determination of the subject-matter" where "nothing further remains to fix the rights and obligations of the parties * * *." Majority Op. at 28. A settlement would not qualify as a "final decision" under the majority's definition, which requires that such a decision be evidence by a "judgment or decree" from a court.

Under the majority's decision the investigative report will never become public.[2] Since the Veteran's Preference Hearing was never held, the majority concludes that there is no final disposition of the matter and the report may never be released. Although it is clear that through his resignation Ledwein withdrew his request for a Veteran's Preference Hearing and the disciplinary proceedings became final, the majority holds it continues indefinitely and that precludes any "final disposition" from being reached. This interpretation of the legislature's intent of the words "final disposition" seems unreasonable. As the majority points out, the legislature "does not intend a result that is absurd, impossible of execution, or unreasonable * * *." Minn. Stat. § 645.17(1) (1986).

2. The investigative report will not be reclassified as public data after 10 years under Minn. Stat. § 13.03, subd. 8 (1986). Subdivision 8 provides that: "Except for security information, *nonpublic and protected nonpublic data* shall become public either ten years after the creation of the data by the government agency or ten years after the data was received or collected by any governmental agency * * *." *Id.*

(emphasis added). The Government Data Practices Act, however, defines "nonpublic data" as "data not on individuals." Minn.Stat. § 13.02, subd. 9 (1986). As such any data on Ledwein is data on an individual and would not be considered nonpublic data. Therefore, the 10–year release provision of Minn.Stat. § 13.03, subd. 8, would not apply, and the material could never be released.

### III.

The majority contends the encouragement of settlements is one reason to allow information such as the investigative report on Ledwein never to become public. This reasoning clearly places the private interest of individuals (avoiding embarrassing information) above the public interest (the right to know what is going on about public officials and why). This contradicts the legislature's intent to favor the public interest as against any private interest. Minn.Stat. § 645.17(5) (1986). The majority also acknowledges that both the Open Meeting Law and the Data Practices Act recognize a policy of public access and openness. Majority Op. at 32. While government bodies may want to avoid litigation or expense to cover up bad hiring decisions or inadequate management, that by itself does not overcome the presumption in favor of the public's right to be informed of the operation of its government. Not only do the citizens of Annandale suffer from this secrecy, but other individuals may be hurt as well. Under the majority's interpretation, none of the information contained in the investigative report could be released to other governing bodies requesting information on Ledwein's performance during his tenure in Annandale if he applies for a job elsewhere. Under the majority's view, even if the report contained evidence of serious misconduct, Ledwein's resignation protects him from ever having the information released. Victims not protected by the majority's decision are those who may suffer from such misconduct in the future because they were not properly warned by past government employers. Encouraging settlements of this nature, which have the effect of covering up important public information, should not be a goal of this court.

The majority also argues that by not allowing government secrecy all employees risk being threatened by false accusations which could permanently damage their reputations. Majority Op. at 33. Not all employee discipline matters, however, will require discussion by a governmental body subject to the provisions of the Open Meeting Law. Most matters will be handled internally by employee supervisors. Nevertheless, if termination is necessary and the issues involved are serious enough to require consideration by a governmental body, then the public has a right to be present at the meeting where such information is discussed.

### IV.

The Data Practices Act also provides that private data on individuals may be released pursuant to a court order. Minn. Stat. § 13.43, subd. 4 (1986). In this case, the trial court ordered the City of Annandale to release to the public copies of the investigative report on William Ledwein. The report was not released pending appeal of the order by Ledwein. However, this court should make clear that if a trial court orders material released pursuant to Minn. Stat. § 13.43, subd. 4 (1986), the material may not be protected under the Data Practices Act. Release pursuant to a court order is an exception to the Data Practices Act, and the majority does not discuss the import of this provision.

### V.

The majority holds that Ledwein had standing to appeal the release of the investigative report since the investigative report would cause "injury in fact" to Ledwein's legitimate interests of reputation and privacy. Majority op. at 27. While this effect on Ledwein may be true, it does not automatically make Ledwein a party to this action. Ledwein was not a party in the district court pleadings filed under Minn.R. Civ.P. 10.01. In addition, the trial court in its memorandum stated that "Mr. William Ledwein is not a party to these proceedings and has filed no pleadings." Ledwein made no effort to intervene in the proceedings under Minn.R.Civ.P. 24 (1988). The United States Supreme Court recently held in *Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988), that petitioners who were not parties in an underlying lawsuit and failed to intervene for purposes of appeal were barred from appealing. *Id.* 108 S.Ct. at 587. The Supreme Court recognized that some courts have found excep-

tions to the intervention requirement when "the nonparty has an interest that is affected by the trial court's judgment"; however, the Court held that "the better practice is for such a nonparty to seek intervention for purposes of appeal." *Id.*[3]

Ledwein was well aware of the proceedings taking place. His counsel attended the trial court hearings. There is no reason given why he could not have sought intervention under Minn.R.Civ.P. 24. Not having properly intervened or been named in the trial court proceedings, he was not a proper appellant before the Minnesota Court of Appeals or this court. There is no doubt that a motion for intervention would have been granted, since he had a right to be an intervenor, yet he failed to follow proper procedure in the trial court. We should not tolerate this type of sloppy procedure and we should follow the United States Supreme Court and promote the practice of intervention under the rules for those individuals who have an interest and may wish to appeal as a party.

I would affirm the result of the court of appeals based on the foregoing reasons. The majority holding and this dissent present two opposing views and interpretations. I agree that the legislature should clarify these statutes to indicate what it intended.

---

**3.** The majority attempts to distinguish the recent *Marino* holding by relying on a 1958 decision of this court which held that an actor who participates in a proceeding on the merits qualifies as a party. The U.S. Supreme Court's reference in its opinion to "nonparties" was meant to encompass such individuals since the Court was attempting to encourage those participating in litigation, who are not formal parties, to do so through the intervention process. There is no evidence that counsel for Ledwein was anything more than an observer at the district court hearing. The majority assumes that Ledwein's attorney "argued" at the hearing. Majority Op. at n. 1. The record provides no information on which to base this assertion. The trial court judge explicitly stated that Ledwein was not a party to the proceedings and filed no pleadings.